ALLEN MARDES ET AL. V. J. M. MEYERS ET AL.

No. 674.

1. **Deed—Omission of Word in Forged Title.**—The clerical omission in the granting clause of a deed attacked for forgery of the name of the grantor, may be supplied by the rest of the deed, and does not vitiate it.

2. **Filling Blanks in Deed Attacked as a Forgery.**—When it appeared from the evidence, that at the time the deed was made it was customary to fill out blanks in manuscript deeds previously prepared in making conveyances, and all the words

which appear to have been written in fresher ink than the rest of the deed are such as would be used in filling up the blanks in a form previously prepared, such fresher writing does not subject the deed to suspicion.

3. **Description of Land in Private Deed.**—"All that tract or parcel of land lying and being situate in Nacogdoches County, having such shape, form, and land marks as are set forth in the title of possession as given by Geo. A. Nixon, special Commissioner for Joseph Vehelin's colony, of which said Mardes was a colonist," is in effect a conveyance by Mardes of the grant made to him as a colonist in Vehelin's colony, and if the title of possession can be identified, it was proper to refer to it, and the deed was sufficient in description to convey the land.

4. **Evidence of the Possession of the Testimonio.**—Evidence of the possession of the Spanish testimonio was properly admitted, although the witnesses did not understand the Spanish language. They only testified to the custody and not the contents of the instrument, and if they do not understand Spanish, that fact would only go to the weight of the evidence.

5. **Comparison of Writings—Signature of a Deed Attacked as Forgery.** A deed being attacked for forgery, the genuine papers offered in support of the attack, for the purpose of comparison of the signatures of the maker, had no relevancy to the issues in the case, except as a basis for the comparison sought to be made. Their exclusion was held error.

6. **Same—Character of Papers that May Be Used.**—The papers offered in evidence and excluded were an original mortgage, dated January 1, 1838, and an original deed, dated November 18, 1851. The deed attacked was dated November 20, 1857. Under the decisions of our Supreme Court, these papers were admissible for the purpose for which they were offered.

7. **Disclaimer.**—After general plea of not guilty, defendants specially pleaded, that they were not in possession of the league sued for unless it was included within certain boundaries which they set out. They also pleaded title to the entire league. The plea setting out the boundaries was not a disclaimer by defendants as to the remainder of the league. The plea of not guilty was without qualification.

Appeal from Polk. Tried below before Hon. L. B. Hightower.

Facts not given in the opinion will be found in report of brief of appellants.

*James E. Hill, D. A. Nunn,* and *Ingraham & Ratcliff,* for appellants.

1.　The deed from Mardes to Brown is void for want of a grantor, for want of certainty and want of description, and evidence can not aid the deed. Coker v. Roberts, 71 Texas, 601, 602; Cook v. Oliver, 83 Texas, 561, 562; Norris v. Hunt, 51 Texas, 612; Giddings v. Day, 84 Texas, 605; Wright v. Lancaster, 48 Texas, 250.

2.　This Brown deed purports to have been executed in 1837, and it was kept off the records until 1886. It shows upon its face different handwritings, made at different times, and the seal made over with different ink, or tampered with at some time. This cast suspicion on it, which defendant who offered it in evidence was required to explain, and he did not do it.

George M. Frazier did not explain these alterations in the deed. He is 62 years of age, brother of William Frazier, who was the administrator of David Brown, and married his only child, the mother of Mary E. Frazier. He says he had seen, handled, and read this deed,

then in the possession of Mary E. Frazier, then living with him. That he knew Brown in 1837; but he failed to show the condition of this deed when he saw it. J. H. Kirby, to whom Mary E. Frazier delivered the deed in 1881, failed to speak of its condition then and now. Collins v. Ball, Hutchings & Co., 82 Texas, 268; Dewees v. Bluntzer, 70 Texas, 407, 408; 1 Greenl. on Ev., sec. 564.

The presumption of law, that alterations were made at the time the deed was executed, does not apply when suspicion is cast on the validity of the instrument, and it has been kept off of the public records nearly fifty years. Rodriguez v. Haynes, 76 Texas, 225; McWhirter v. Allen, 1 Texas Civ. App., 649.

3. The trial court erred in this: On the trial, defendants, over the objections of plaintiffs, proved by Frazier, Kirby, and Cooper, by depositions (without showing that they were qualified to read and interpret the Spanish language, and without said witnesses furnishing this court their translated copies of the instrument, the contents of which they testified to), viz: By Frazier, that he had read the Spanish title to the Abner Mardes league in the hands of Mary E. Frazier, and that the Abner Mardes league of land was mentioned in the said Spanish title. By Kirby, that he had in his possession the Spanish title, or testimonio in Spanish, of the grant signed by George Antonio Nixon, commissioner, to Abner Mardes, granting to said Mardes a league of land in Texas, dated in September, 1835. By Cooper, that he had in his possession the said grant from the government to Abner Mardes granting him a league of land. That he first saw the testimonio when delivered to him by Kirby. The court sustained plaintiff's objections in so far as the witnesses testified as to what the Spanish instrument was or as to what it contained, but allowed the evidence of these witnesses to go to the jury to show that the said witnesses had in their possession an instrument in the Spanish language, and to show from whom said instrument was received, and to show when it was executed, and for no other purpose. Sartor v. Bolinger, 59 Texas, 413, 414.

4. The court admitted in evidence, by depositions of Hall, Commissioner of the General Land Office, and X. B. De Bray, Spanish translator in said office, and Marks, a photographic artist, an exact reproduction of the signature of A. Mardes, found on the original Spanish title, an archive in the General Land Office. Plaintiffs then proved, by the depositions of Mary E. Baker and Abner G. Mardes, that they were the children of Abner Mardes, deceased, and that the photographic copy then before them was the signature of their father, Abner Mardes, who could only write A. Mardes, and that the signature of Abner Mardes to the original deed or instrument purporting to be from Abner Mardes to David Brown (read in evidence by defendants), then before said witnesses, was a forgery.

Mary E. Baker produced from among the papers of her deceased father, Abner Mardes, in her possession, an original mortgage, signed by him January 1, 1838, in favor of F. Beaumont, and an original deed

from Abner Mardes to J. Peter Goets, dated November 18, 1851, signed by Abner Mardes; both of said original instruments having been acted on by Abner Mardes, executed by him, and recorded in Adams County, Mississippi, immediately after execution.

The witnesses Mary E. Baker and Abner G. Mardes, having sworn that the signature signed thus, A. Mardes, to each of said instruments, was the signature of their father, Abner Mardes, deceased, and the same signature as the said photograph, and not the same signature as that to the David Brown deed, and that the signature, Abner Mardes, to the David Brown deed, is a forgery, and was not signed by Abner Mardes, plaintiff then offered said original instruments in evidence, which, on objections by defendants, because not admitted to be genuine, were open to collateral issues, and irrelevant, were excluded by the court; to which plaintiffs excepted and assigns as error the ruling of the court. [A fac-simile of said signatures was produced at the trial.] 1 Greenl. on Ev., sec. 581, note 2; Id., sec. 581a; In re Gordon's Will, 26 Atl. Rep., 277, 278; In re Rockey's Estate, appeal of Brown, 26 Atl. Rep., 656, 657; Strother v. Lucas, 6 Pet., 763.

5. The court erred in excluding as evidence the transcript of the Probate Court of San Augustine County, Texas, in the succession of the estate of David Brown, deceased. The said transcript showed that Frazier, the administrator of David Brown, deceased, did not inventory the Abner Mardes league of land involved in this suit as the property of David Brown, and that William B. Frazier was in 1857 the administrator of the estate of David Brown, deceased. The estate of David Brown did not claim this land anywhere on the record during the succession.

6. Appellee Myers having pleaded specially his title and possession, and set out by field notes the land he claims, by this he abandons his plea of not guilty, and can rely only on his special plea. Hoodless v. Winter, 80 Texas, 640, 641.

*Holshousen & Feagin* and *I. R. Burnett,* for appellees.—1. There were no interlineations that required explanation. The deed was filled out on a blank form, and this was customary in those days, as testified to by Colonel Blount and Mr. Johnson, and as recognized by our Supreme Court. Hollis v. Dashiell, 52 Texas, 187.

2. The evidence of Frazier, Kirby, and Cooper was admissible to show custody of the Mardes deed, and as a circumstance on the issue of forgery.

3. The original deed and mortgage offered for comparison of handwriting were properly excluded. Matlock v. Glover, 63 Texas, 231; Smythe v. Caswell, 67 Texas, 567.

4. Appellees having admitted that the inventory of Brown's estate did not include the Mardes league in controversy, the transcript was properly excluded. It was clearly not admissible except to show this admitted fact.

GARRETT, CHIEF JUSTICE.—This was an action of trespass to try title brought by the appellants to recover of the appellees the Abner Mardes league of land, situated in what is now Polk County. Plaintiffs are the heirs of Abner Mardes, the original grantee of said league. The defense is, that Abner Mardes, by a deed executed November 20, 1837, conveyed the land to David Brown, under whom the defendants claim. This deed is attacked by plaintiffs as a forgery, and its introduction in evidence in the court below was also objected to, for the reason that it was void for the want of a description of the land to be conveyed; also, because it was not free from suspicion on account of alterations appearing on the face of the deed; the land was not in Nacogdoches County; and the name of the grantor did not appear in the granting clause. The deed was admitted in evidence, and upon the issue of forgery, the jury found that it was genuine. Other questions arose on the trial which have been presented by the appellants in their brief.

The following is a copy of the deed. We have underscored, to be italicized, such words as readily appear from an inspection of the original deed sent up with the transcript not to have been written with the same ink as the rest of the instrument:

"REPUBLICK OF TEXAS, }
"County of Nacogdoches. }

"This indenture, made this *twentieth* day of *November*, in the year of our Lord one thousand eight hundred and thirty-*seven*, by and between *Abner Mardes*, of the county of *Liberty*, and Republick afs., of the one part, and *David Brown*, of the county of *San Augustine*, and Republick afs., of the other part, witnesseth, that the said, for and in consideration of the sum of *five hundred dollars*, current money of the Republick afs., to *him* in hand paid at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, have this day granted, bargained, and sold, and by these presents do grant, bargain, sell, and convey unto *David Brown*, *his* heirs and assigns, forever, *all that tract or parcel of land lying and being situate in Nacogdoches County, having such shape, form, and landmarks as are set forth in the title of possession as given by Geo. A. Nixon, especial commissioner for Joseph Vehelin's colony, of which the said Mardes was a colonist.*

"To. have and hold the above described land and premises unto the said *David Brown*, *his* heirs and assigns forever, in fee simple.

"And the said *Abner Mardes*, for and in consideration of the premises aforesaid, do for *himself*, *his* heirs, and assigns, covenant and agree to and with the said to warrant, and by these presents do warrant and forever defend, the right and title to said land and premises against the claim or claims of any person whatsoever lawfully claiming the same or any part thereof.

"In testimony whereof *I have* set *my* hand affixed my seal the day and year first hereinbefore written. *"Abner Mardes.*

"Signed, sealed, and delivered in the presence of

"THOS. H. GARDNER,

"S. EATON."

We are of the opinion that the deed is sufficient, in connection with other proper evidence in aid thereof, to convey the league of land granted by the Mexican government to Abner Mardes. It purports to be an indenture between *Abner Mardes* of the one part and David Brown of the other part; *Abner Mardes* covenants to warrant the title, and it is signed *Abner Mardes.* The clerical omission of the name after "said," in the granting clause, may be easily supplied by the rest of the deed, from which Abner Mardes clearly appears to be the grantor. In Stone v. Sledge, 87 Texas, 49, it nowhere appeared from the deed that Mrs. Stone was to join her husband in its execution. It appeared from the evidence in this case, that at the time the deed purported to have been executed it was customary to fill out blanks in manuscript deeds previously prepared in making conveyances, and all of the words which appear to have been written in fresher or blacker ink than the rest of the deed are such as would be used in filling up the blanks in a general form previously prepared, and do not subject the deed to suspicion.

The land conveyed is not described in the deed except by reference to "the title of possession as given by Geo. A. Nixon, especial commissioner for Joseph Vehelin's colony, of which the said Mardes was a colonist. If the "title of possession" referred to can be identified, it is proper to refer to it for a more definite description; and in order to identify it, the words, "of which the said Mardes was a colonist," should not be rejected as mere description of the person if they can be made applicable to a particular tract of land. From a knowledge of the early colonization laws of Texas, we know that, as a colonist of Joseph Vehelin's colony, Abner Mardes would be entitled to receive a grant of land, and the words above quoted would have reference to such a grant and could have application to no other. In the language used, the grantor says, in effect, that he conveys the grant made to him as a colonist of Joseph Vehelin's colony, which would be sufficient to convey the land.

There does not seem to be anything in the objection that the land was not situated in Nacogdoches County as it then existed.

There was no error in permitting the witnesses Frazier, Kirby, and Cooper to testify, as complained of in the second assignment of error, about the possession of the Spanish title, or testimonio in Spanish, of the grant to Abner Mardes, without showing that they were able to understand Spanish and furnishing translated copies thereof. They only testified as to the custody of the testimonio, not the contents, and if they did not understand the Spanish language, the fact would only

go to the weight of their evidence.   The evidence was admissible to show custody, which was a circumstance bearing upon the issue of forgery.

Upon this issue, plaintiffs took the depositions of Mary E. Baker and Abner G. Mardes, who testified, that they were children of Abner Mardes, deceased; that they had often seen him write his name, which was all the writing he could do; and in writing his name he only wrote the initial A., and never wrote "Abner;" that the signature, "Abner Mardes," to the deed purporting to be from Abner Mardes to David Brown, the original of which was before them, was not the signature of their father.   A comparison of the signature to the deed was made with a photographic copy of the signature "A. Mardes" in the grant from the archives of the Land Office, and the latter signature was declared to be genuine.   Mrs. Baker produced from among the papers of her deceased father, Abner Mardes, in her possession, an original mortgage signed by him January 1, 1838, in favor of F. Beaumont, and an original deed from Abner Mardes to J. Peter Goets, dated November 18, 1851, signed by Abner Mardes; both of said original instruments having been acted on by Abner Mardes, executed by him, and recorded in Adams County, Mississippi, immediately after execution, and testified, that the papers bore the genuine signature of her father; that they were found in his home after his death, and were the only ones in her possession bearing his signature.   These papers were offered in evidence by the plaintiffs in confirmation and explanation of testimony as to the signature of their father, but on objection by the defendants, that they were not admitted to be genuine, and raised a collateral issue, and were not relevant, they were excluded by the court.

It is the rule in this State that irrelevant papers are not admissible in evidence for the sole purpose of furnishing a standard of comparison of handwriting, unless they are admitted to be genuine, or are such as the party is estopped to deny, or are established by the most satisfactory proof; but papers already in evidence for other purposes may be used.   9 Am. and Eng. Encyc. of Law, 285, note 1, where the Texas authorities are collected; also Jester v. Steiner, 86 Texas, 420. Greenleaf announces the rule as to the admission of such papers, deduced by him from the conflict of authority in America, as follows: "If it were possible to extract from the conflicting judgments a rule which would find support from a majority of them, perhaps it would be found not to extend beyond this: that such papers can be offered in evidence to the jury only when no collateral issue can be raised concerning them; which is only where the papers are either conceded to be genuine, or are such as the other party is estopped to deny; or are papers belonging to the witness, who was himself previously acquainted with the party's handwriting, and who exhibits them in confirmation and explanation of his own testimony."   1 Greenl. on Ev., 581.

According, then, to the rule established by Greenleaf, such papers are admissible only when no collateral issue can be raised concerning them, or when exhibited in confirmation and explanation of testimony under the restrictions stated. Our Supreme Court, while never having had the precise question before it, has perhaps gone a little further in the direction of the admission of such papers in holding them admissible when established by the most satisfactory evidence. In Eborn v. Zimpleman, 47 Texas, 518, the above citation from Greenleaf is made, and as the extension of the rules as laid down by Greenleaf is reasonable, and yet within the strict line as drawn by our Supreme Court, we believe it should be fully adopted, and that the evidence excluded was admissible.

Defendants in their answer pleaded "not guilty," and afterwards specially, that they were not in possession of the league, unless the same or a part thereof was included in certain boundaries which they set out. They also pleaded title to the entire league. The evidence showed, that the boundaries set out by the defendants contained only about 500 acres of the land embraced in the Mardes league showing definitely the boundaries thereof. Plaintiffs requested the court to instruct the jury to return a verdict in their favor in any event for all of the Mardes league not included in the boundaries aforesaid, treating their answer as a disclaimer as to the rest of the league; and the refusal of the court so to instruct the jury has been assigned as error. Having pleaded "not guilty" and title to the land in controversy, the plea setting out the boundaries can not be held to be a disclaimer by the defendants as to the remainder. The plea of not guilty was without qualification. Herring v. Swain, 84 Texas, 524.

There was no error in excluding the transcript of the proceedings in the estate of David Brown, deceased, from the Probate Court of San Augustine County, it having been admitted that the Abner Mardes league was not upon the inventory in said estate.

As the case must be remanded for another trial, we will not examine the thirteenth assignment of error, which is, that the judgment of the court below is without evidence to support it.

For the error of the court in excluding the papers offered in connection with the deposition of Mary E. Baker, the judgment of the court below will be reversed and the cause remanded.

*Reversed and remanded.*

Delivered November 22, 1894.

WILLIAMS, Associate Justice, did not sit in this case.