McDOUGAL et al. v. CONN. (No. 198.)

(Court of Civil Appeals of Texas. Beaumont. May 10, 1917. Rehearing Denied May 30, 1917.)

1. DEEDS ⬤⟳41—DESCRIPTION—SUFFICIENCY—REFERENCE TO OTHER INSTRUMENT.
    A deed reciting that grantor conveyed a certain tract or parcel of land, "the title and possession was by George Antonio Nixon, commissioner for said colony, on the 16th day of March, A. D. 1835, and for more particular description of said reference is hereby made to the original title now on file in the Gen. Land Office of this," where the deed on file in the Land Office definitely described the land, was sufficient.
    [Ed. Note.—For other cases, see Deeds, Cent. Dig. § 84.]

2. WORDS AND PHRASES — "PATENT AMBIGUITY."
    A patent ambiguity is one apparent on the face of the instrument, and which remains uncertain after all the evidence of surrounding circumstances and collateral facts admissible under the proper rules of evidence is exhausted; citing Words and Phrases, Patent Ambiguity.

3. WORDS AND PHRASES — "LATENT AMBIGUITY."
    A latent ambiguity is one where the writing appears on the face of it certain and free from ambiguity, but the ambiguity is introduced by evidence of something extrinsic or by some collateral matter out of the instrument.
    [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Latent Ambiguity.]

4. DEEDS ⬤⟳99—DESCRIPTION—REFERENCE TO OTHER INSTRUMENT.
    Where a deed refers to land as that granted by a certain instrument on file in the General Land Office, such other instrument becomes a part of the deed.
    [Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 261-265.]

5. DEEDS ⬤⟳41—DESCRIPTION—SUFFICIENCY.
    Where a deed was made in the republic of Texas, and referred to a deed on file in the General Land Office, without stating of what state or country the General Office was a department, mere omission of the words "of the republic of Texas" did not raise an ambiguity.
    [Ed. Note.—For other cases, see Deeds, Cent. Dig. § 84.]

6. DEEDS ⬤⟳192—DESCRIPTIONS—SUFFICIENCY—BURDEN OF PROOF.
    The burden of proof is upon one seeking to show the ambiguity in a deed.
    [Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 562, 563.]

7. DEEDS ⬤⟳93—DESCRIPTION—"PATENT AMBIGUITY."
    It cannot be said that there is a patent ambiguity in a deed if the court, placing itself in the situation of the parties, could ascertain what they meant.
    [Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 231, 232.]

**8. VENDOR AND PURCHASER** ⊙⇒231(11)—GOOD FAITH OF INNOCENT PURCHASER.

One who acquired a deed to land after deeds of other parties through a long course of years had been recorded, and specifically described the property, was not an innocent purchaser.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 528.]

Appeal from District Court, Tyler County; A. E. Davis, Judge.

Suit by Mrs. E. S. McDougal and others against Houston Oil Company of Texas, wherein E. J. Conn intervened. Plaintiffs and defendant formed an agreement, whereupon intervener took the position of plaintiff. From the decree rendered, Mrs. McDougal and others appeal. Reversed and judgment rendered.

J. A. Dial, of Sulpher Springs, W. A. Johnson, of Woodville, and Parker & Kennerly and J. J. Lee, all of Houston, for appellants. John W. Mackey, C. W. Howth, and F. G. Vaughn, all of Beaumont, for appellee.

BROOKE, J. On the 12th day of January, A. D. 1915, appellants Mrs. E. S. McDougal, Mrs. Mildred S. Hatch, Albert Banks, Lorena Banks, and Mattie Banks filed in the district court of ·Tyler county their original petition in trespass to try title, seeking to recover against the appellant Houston Oil Company of Texas the ·title and possession of · the George T. W. Collins league of land in Tyler county.

On the 14th day of January, 1915, the appellee, E. J. Conn, filed in the district court of Tyler county his original petition in intervention in.trespass to try title, seeking to recover of and from the appellants Mrs. E. S. McDougal, Mildred S. Hatch, Albert Banks, Lorena Banks, Mattie Banks, and Houston Oil Company of Texas, who at that time were the only parties to this cause, the title and possession of said Collins league.

On the 1st day of February, 1915, the defendant, Houston Oil Company of Texas, duly filed its answer to the suit against it by the original plaintiffs, Mrs. E. S. McDougal et al., above named, and the plea of intervention against it by said appellee, Conn.

On July 31, 1916, Mrs. E. S. McDougal, Mildred S. Hatch, Albert Banks, Lorena Banks, Mattie Banks, and James B. Banks, Lorena McMurtray, Horace McMurtray, and Lorena McMurtray, minors, by their next friend, Lorena McMurtray, styling themselves plaintiffs, filed "Plaintiffs' First Amended Original Petition" against the defendant, Houston Oil Company of Texas, seeking to recover said Collins league. It will be noted that James B. Banks, Lorena McMurtray, and the two minors, Horace and Lorena McMurtray, were not original parties plaintiff in the cause filed by Mrs. E. S. McDougal and others on January 12, 1915, but they only became parties to this cause by the petition filed July 31, 1916.

On July 27, 1915, the intervener, E. J. Conn, filed his first amended plea of intervention, seeking therein to recover from E. S. McDougal, Mildred S. Hatch, Albert Banks, Lorena Banks, Mattie Banks, and Houston Oil Company of Texas the said ,Collins league. James B. Banks, Lorena McMurtray, and the minors, Lorena and Horace McMurtray, were not made parties defendant by said intervener in this amended pleading.

On August 8, 1916, the defendant, Houston Oil Company of Texas, filed its second amended original answer and cross-answer in replication to plaintiffs' last filed petition, and to intervener's last filed plea, and, by way of cross-action, said defendant, Houston Oil Company of Texas, prayed for affirmative relief against the said plaintiffs, Mrs. E. S. McDougal, Albert Banks, Mildred S. Hatch, Lorena Banks, Mattie Banks, James B. Banks, Lorena McMurtray, and minors, Horace and Lorena McMurtray. On July 31, 1916, the plaintiffs last above named filed their answer to the cross-action of the defendant, Houston Oil Company of Texas.

On July 31, 1916, the·plaintiffs, Mrs. E. S. McDougal, Mildred ·S. Hatch, Albert Banks, Lorena McMurtray, and Lorena and Horace McMurtray, minors, by their next friend, Lorena McMurtray, filed a supplemental petition in answer to the amended plea of intervention filed by the intervener, E. J. Conn. This answer to intervener's plea was filed by, the attorneys for James B. Banks, Lorena McMurtray, and the two minors, Horace and Lorena McMurtray, although the said lastnamed parties were not made parties defendant, nor were they named in the intervener's first amended plea of intervention above referred to.

On August 8, 1916, the plaintiffs, Mrs. E. S. McDougal, Mildred S. Hatch, Albert Banks, Lorena Banks, Mattie Banks, James B. Banks, Lorena McMurtray, and the minors, Horace and Lorena McMurtray, by their next friend, Lorena McMurtray, on· the one part, and the defendant, Houston Oil Company of Texas, on the other part, in open court, agreed to pool their interests, and thereupon filed their written agreement in said cause, providing that the plaintiffs, on the one part, should have one-half, and the defendant, Houston Oil Company of Texas, on the other part, should have one-half, of whatever interest either party had or might recover in said cause.

The plaintiffs and · the defendant having agreed upon a settlement of the case as between them, the court therefore required the intervener to take the position of plaintiff in the case as against the original plaintiffs, E. S. McDougal et al., and the defendant, Houston Oil Company of Texas; the said plaintiffs and· the defendant taking the position of defendants to the, cause of action alleged

---

⊙⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

against them by said intervener, thereby placing the burden of proof on the intervener, E. J. Conn, to make out his title to the land in controversy.

By the first amended plea of intervention, upon which this case was tried, the land in controversy was described as being:

"A tract or parcel of land containing one Spanish league of land, 4,428 acres of land, more or less, according to survey, lying and being in Tyler county, Texas, on the west bank of the Neches river, and being the league of land granted to Geo. W. T. Collins as his headright, and described by metes and bounds as follows:

"Beginning on the west bank of the Neches river where a stake was driven and a mound of earth raised, from which a white oak 24 in. dia. brs. north, 11 deg. 30' east, $4^9/_{10}$ vrs., and an elm 12 in. in dia. brs. N., 43 deg. 30' west, $7^6/_{10}$ vrs. dist.; thence west 9,209 vrs. to second corner, a stake, from which a pine 12 in. dia. brs. N., 28 deg. 45' east, $4^4/_{10}$ vrs. dist., and another pine 11 in. in dia. brs. N., 72 deg. E., 8 vrs. dist.; thence north 2,500 vrs. a stake for third corner, from which a 10 in. pine brs. S., 3 deg. E., 16 vrs. dist., and a pine 8 in. in dia. brs. S., 1 deg. east, 17 vrs. dist.; thence east 10,-929 vrs. a stake, the 4th corner on the west side of the Neches river, and being the S. E. corner of a survey whose line trees are marked T. L.; thence descending said river along its various courses till returning to the corner where this survey was begun.

"That on the day and year last aforesaid, to wit, January 10, A. D. 1915, the said plaintiffs and defendant unlawfully entered upon said land and premises, and ejected this intervener therefrom, and unlawfully withholds from him the possession thereof, to his damages in the sum of $2,500."

The cause proceeded to trial before the court, neither party having demanded a jury. On August 23, 1916, judgment was rendered by the court that the intervener, Conn, recover an undivided $3/_{22}$ interest in and to the Collins league, and that the said defendants jointly recover the remaining $19/_{22}$ interest therein. Notice of appeal was duly given, errors assigned, and the cause is before this court for adjudication.

In accordance with the written request of attorneys for both plaintiff and defendants, the court filed the following findings of fact and conclusions of law:

"Findings of Fact.

"(1) That the Geo. T. W. Collins league of land situated in Tyler county, Tex., was granted to said Collins on March 16, A. D. 1835, and contains definite description by field notes.

"(2) It was admitted, and I find as facts, that E. J. Conn has $3/_{22}$ interest, and the Houston Oil Company of Texas had $19/_{22}$ of the Geo. T. W. Collins heirs, in and to the said Collins league; and that Mrs. E. S. McDougal et al., original plaintiffs, are the heirs of C. S. Aiken and wife.

"(3) I find the instrument offered in evidence, executed by Geo. T. W. Collins, purporting to be a deed to David O. Warren, of date July 9, A. D. 1841, of record in Book A, page 60, of Menard County Records, which record is now in the county clerk's office of Tyler county, contains, for description of the property therein it undertakes to convey, as follows: 'All that certain tract or parcel of land lying and being situated west of the River Neches, in Zavallas' Colony, containing four thousand four hundred and twenty-eight acres English measurement, more or less, the title and possession was by George Antonio Nixon, commissioner for said colony, on the 16th day of March, A. D. 1835, and for more particular description of said reference is hereby made to the original title now on file in the Gen. Land Office of this and for the said David O. Warren.' And that said instrument contains no other or further reference or description to the land intended to be conveyed, and that such description is wholly insufficient to identify the land, and contains no reference by which it may be identified with certainty.

"(4) I find that E. J. Conn purchased from part of the heirs of Geo. T. W. Collins the Geo. T. W. Collins league, which amounted to a $3/_{22}$ interest in said league, on the 4th day of Jan., 1915, which is of record in Book 35, page 603, of Tyler County Deed Records, paying in cash the sum of $306, and in work to be performed the sum of $194, same being a valuable consideration, in good faith and without notice of the claim or title outstanding in third parties; and the instrument of record from Geo. T. W. Collins to David O. Warren contains an insufficient description, and fails to identify the land, and was not sufficient to put E. J. Conn on notice of inquiry.

"(5) I find that E. J. Conn understood that the timber on the Geo. T. W. Collins league was cut by the Houston Oil Company of Texas, and that he knew said company owned and held title to $19/_{22}$ interest in said league from the Geo. T. W. Collins heirs; that there was nothing further to place him on inquiry as to the title thereto, having been advised by Messrs. Mantooth & Collins, who sold him such $3/_{22}$ interest from the Geo. T. W. Collins heirs; that he was getting a good title, and that he had confidence in their statement, though they represented such heirs' interest in the sale thereof by a power of attorney, and nothing appearing of record to place him on notice and understanding, as the facts were that he was acquiring a title in common with the Houston Oil Company of Texas, who had cut the timber on the land without being questioned, I conclude E. J. Conn was an innocent purchaser, paying a valuable consideration in good faith without notice of the said $3/_{22}$ interest in said Geo. T. W. Collins league of land.

"Conclusions of Law.

"(1) I conclude, as a matter of law, that the instrument from Geo. T. W. Collins to David O. Warren, with the description set forth in third conclusion of fact above, is insufficient to pass title, that said description does not identify any property, nor give sufficient reference by which same might be identified, and that such description is a patent defect, and cannot be aided by extrinsic or extraneous evidence, and is therefore void.

"(2) I conclude, from the foregoing conclusions of fact, that E. J. Conn is a bona fide purchaser of the $3/_{22}$ interest in said Collins league of land, therefore should recover to that extent.

"(3) I conclude from the foregoing facts and the admission that the Houston Oil Company of Texas has and holds $19/_{22}$ interest in said Collins league under Geo. T. W. Collins' heirs, and that said company and the original plaintiffs, Mrs. E. S. McDougal et al., have agreed to divide equally the recovery by them or either of them herein, that said Houston Oil Company of Texas and the original plaintiffs, Mrs. E. S. McDougal et al., are entitled to recover herein the title to $19/_{22}$ interest in said league of land."

"Upon the joint request of plaintiffs and defendant Houston Oil Company of Texas that the court file additional findings of fact in this cause, the court, in compliance therewith, makes the following findings in addition to its findings heretofore made herein:

"(1) I find that on December 1, 1875, Mildred S. Hatch, one of the plaintiffs herein, executed a power of attorney to Asa Hamilton Hatch, au-

thorizing him for her to transact all of her business with C. H. Taylor, and to settle with and receive from said Taylor all land, papers, land certificates, and other properties affecting lands in Texas that said Taylor had had placed in his possession as attorney in fact for Cyrus S. Aiken. I find that said instrument was recorded in the deed records of Tyler county, January 22, 1876.

"(2) I find that on December 1, 1875, Christopher I. Hatch and wife, Mary N. Hatch, and William Aikin Hatch, executed a power of attorney to Asa Hamilton Hatch for the same purpose as above stated, which said power of attorney was recorded in the deed records of Tyler county on January 22, 1876.

"(3) I find that James C. Beck executed a power of attorney to Asa Hamilton Hatch for the purposes above stated on the 22d November, 1875, which was duly recorded in Tyler county on January 22, 1876.

"(4) I find that the foregoing instruments authorized and gave to said attorney 'full power and authority to do all acts necessary and proper to be done in and about the premises.'

"(5) I find that on January 20, 1876, said Asa H. Hatch executed to James G. Collier a power of attorney reciting that he, said Hatch, as attorney in fact for the above-named parties, appointed said Collier his agent and the agents. of the parties who authorize him to act for them, empowering said Collier to dispose of ⅔ interest in the Gco. T. W. Collins league of land lying and situated on the west bank of the Neches river, which said instrument was duly recorded in the deed records of Tyler county on January 29, 1876.

"(6) I find that said Collier, as agent of said parties, executed on November 9, 1881, a deed to Allen Hooks conveying 160 acres of said Collins league, which said deed was recorded in the deed records of Tyler county on November 18, 1881.

"(7) I find that Robert D. Webb, as agent and attorney in fact for all the heirs of Jane Love Aiken, John G. Aiken, and Cyrus Aiken, deceased, on April 6, 1893, conveyed to Sarah Ann Hooks the same land conveyed to Allen Hooks, which deed was recorded in the deed records of Tyler county on December 23, 1893, and again recorded in the deed records of Tyler county on August 1, 1894.

"(7) I find that Allen Hooks on May 30, 1889, conveyed to James A. Hooks a tract of about 50 acres out of the 160 acres conveyed to said grantor, which deed was recorded in Tyler county January 1, 1894.

"(8) I find that said J. A. Hooks conveyed said last-named tract to D. K. Martin August 30, 1894, which deed was duly recorded in Tyler county on September 14, 1894.

"(9) I find that said D. K. Martin has lived upon lands claimed by him on said Collins league, which lands were described in the chain of deeds from the heirs of Cyrus S. Aiken down to said D. K. Martin for more than twenty years, and that he was living on said lands, and his deeds under the heirs of Aiken thereto were of record in Tyler county at and long before the time said intervener purchased from a part of the heirs of Collins on January 4, 1915.

"(10) I find that J. A. Hutto was in possession of the lands on the Collins league under chain of deeds from the heirs of Cyrus S. Aiken, that said deeds described said land of which Hutto was in possession, and that same were of record in Tyler county at the time and long before said intervener purchased from a part of the heirs of Collins.

"(11) I find that both Hutto and Martin were in actual possession of their respective lands at the time that Conn purchased from a part of the heirs of Collins.

"(12) I find that a description in the deed from part of the heirs of Collins to said Conn included and purported to convey all of the Collins league, including all of the lands thereon claimed and in the possession of the said Hutto and said Martin.

"(13) I find that said E. J. Conn did not make any investigation with reference to the claim of said Martin and Hutto, nor to any other person to said land."

It was agreed by all parties to this suit that the defendant Houston Oil Company of Texas had acquired from said parties, descendants and heirs of George T. W. Collins, $19/22$ of whatever interest the heirs of said Collins might have in and to the league of land in controversy. The judgment awarded to E. S. McDougal and others, and the defendant Houston Oil Company of Texas, an undivided $19/22$ interest in and to the said league. Therefore, on this appeal, it is not contended that there was error in the judgment of the court, save as to awarding to the appellee E. J. Conn an undivided $3/22$ of said league, which action of the court, in so rendering judgment for appellee, the appellants contend was erroneous.

The land in controversy, and which has been heretofore described, was a league of land situated on the west bank of the Neches river, in Zavalla's colony, which was granted to George T. W. Collins on the 16th day of March, 1835, by George Antonio Nixon, commissioner for Zavalla's colony. The appellee claims title to the land in controversy by virtue of the following instruments:

(1) Power of attorney executed by A. L. Collins and others, who were $3/22$ of the descendants or heirs of George T. W. Collins, to E. J. Mantooth and C. B. Collins, dated May 23, 1913. This power of attorney conveyed to Mantooth and Collins an undivided one-half of whatever interest in said league of land the said A. L. Collins and others had therein.

(2) Deed by E. J. Mantooth and C. B. Collins, for themselves and as attorneys in fact of said A. L. Collins and others, to E. J. Conn, conveying all of the said George T. W. Collins league of land, the deed being in the form of special warranty and reciting a consideration of $3,000 cash paid.

After offering in evidence the above instruments, appellee rested.

Appellants, to show superior outstanding title with which the appellee did not connect, and to show title in appellants, offered in evidence the following instruments:

(1) A deed dated July 9, 1841, executed by George T. W. Collins to David O. Warren, reciting that, for the consideration of $500 cash paid by Warren to Collins, the said Collins conveyed to Warren as follows:

"Republic of Texas, San Augustino County.

"Know all men by these presents, that I, George T. W. Collins, of the county of Nacogdoches, for and in consideration of the sum of five hundred dollars cash to me in hand paid by David O. Warren, of the county of San Augustine and republic aforesaid, hath this day granted, bargained, sold, conveyed, and quitclaimed, and by these presents do grant, bargain, sell, convey, and forever quitclaim, unto the said David O. Warren, his heirs, executors, administrators, or assigns, all that certain tract or parcel

of land lying and being situated west of the River Neches, in Zavalla's colony, containing four thousand four hundred and twenty-eight acres English measurement, more or less, the title and possession was by George Antonio Nixon, commissioner for said colony, on the 16th day of March, A. D. 1835, and for more particular description of said reference is hereby made to the original title now on file in the Gen. Land Office of this, and for the said David O. Warren, his heirs and assigns, to have and to hold the above-described league of land, with all and singular the rights, liberties, and privileges thereunto belonging or in any wise appertaining to himself, his heirs and assigns, forever. And the said Collins do for myself, my heirs, executors, and administrators, warrant and defend the right, title, and claim of possession to said land against the claim of myself, my heirs, executors, or assigns, forever. In testimony whereof, I, the said Collins, have hereunto set my hand and affixed my seal this 9th day of July, A. D. 1841.
"George T. W. Collins. [Seal.]
"Signed, sealed, and delivered in presence of
"John W. Warren.
"Eliza S. Warren."

(2) A deed dated A. D. January 10, 1842, from said David O. Warren to Cyrus S. Aiken, conveying 3,873 acres by the following description:

"All that certain tract or parcel of land containing 3,873 acres, English measurement, and being situated in the county of Menard, and on the west side of the Big Neches or Snow river, the same that was originally granted to George T. W. Collins, an old settler of Texas, by the commissioner, George Antonio Nixon, for the colony of Lorenza D. Zavalla, on the 16th day of March, 1835, by the said George T. W. Collins sold to me on the 9th day of July, 1841, and for a more particular description of said land reference is hereby made to the copy of the original title hereunto annexed and made a part of this title and also the sale to me, all of which papers are also delivered to the purchaser, the said Cyrus S. Aiken."

Depositions of Mrs. E. S. McDougal and Mrs. Mildred S. Hatch, appellants, were then offered in evidence, showing that the original plaintiffs, Mrs. McDougal and others, were the heirs at law of said Cyrus S. Aiken. The court found that the original plaintiffs, Mrs. McDougal and others, were the heirs of Cyrus S. Aiken and his wife. Appellant then rested.

By appellant's first assignment complaint is made that the court erred as follows:

"As George T. W. Collins on the 9th day of July, A. D. 1841, conveyed to David O. Warren a league of land situated west of the River Neches, in Zavalla's colony, to which title and possession was given on the 16th day of March, A. D. 1835, by George Antonio Nixon, commissioner for Zavalla's colony—said deed referring for more particular description to the original title then on file in the General Land Office— the court erred to the prejudice of these appellants in holding that said deed did not convey nor sufficiently describe the land in controversy herein, as the land in controversy being as described in the original grant, a league of land, situated west of the River Neches, in Zavalla's colony, to which title and possession was given on the 16th day of March, A. D. 1835, by George Antonio Nixon, commissioner for Zavalla's colony, the original of which title issued to said Collins was required by law, at the date of the deed from Collins to Warren, to be kept in the General Land Office."

The court found, as above set out, that the George T. W. Collins league was granted to Collins on March 16, 1835, the grant containing a definite description by field notes. In the third finding of fact, the court found that the description in the deed from George T. W. Collins to David O. Warren, dated July 9, 1841, was insufficient to identify the land, and that it contained no reference to identify the land with certainty. In the first conclusion of law the court held that the description in the deed above referred to was insufficient to pass title, did not identify the same, the description being a patent defect, so that it could not be aided by extrinsic evidence, therefore, holding the deed void.

The question for this court to decide, it being decisive of perhaps all other questions in this case, is whether or not the deed is void because it did not sufficiently describe the land sought to be conveyed. As said by the Supreme Court in the case of Houston Oil Company of Texas v. Kimball, 103 Tex. 106, 122 S. W. 533, 124 S. W. 85, this objection was urged and raised by a number of assignments of error. The description in the deed in the Kimball Case is as follows:

"I, O. C. Nelson, of the county of Jasper and republic aforesaid, * * * have granted, bargained, sold, aliened, and conveyed, and by these presents do grant, bargain, sell, alien, and confirm in bona fide sale, all that tract of land containing four thousand four hundred and twenty-eight acres of land, commencing at post on the W. bank of Neches; thence W. 10,000 yds.; thence N. 2,500 yds.; thence E. 10,500 yds.; thence down said river to commencement, 11 labors arable, and 14 labors pasture, land, it being the league of land granted by George A. Nixon, commissioner of Zavalla colony, on the 18th day of August, 1835, and for a more particular description reference is here made to the original plat and field notes on file and of record in the General Land Office of this Republic."

Both parties introduced the original grant in this case, as was done in the Kimball Case. It will be noted that the language used in the deed in the Kimball Case, together with the omissions, was almost identical with the language used in the instant case. In the Kimball Case the following language is used: "It being the league of land granted by George A. Nixon." In the present case the following language is used: "The title and possession was by George Antonio Nixon, commissioner for said colony, on the 16th day of March, A. D. 1835." It is not expressly stated in the language under consideration in this case to whom the land was granted, and in the Kimball Case the name of the grantee was also omitted. Reference is made in the instant case, in the language of the deed, as follows: "And for more particular description of said reference is hereby made to the original title now on file in the General Land Office"—using the identical language used in the Kimball Case save and except in the Kimball Case the words "of this Republic" were used. Therefore we are fortunate in having an instrument of almost identical

language, which has been heretofore passed on by the highest court of this state. It is stated in the Kimball Case that the field notes of the grant correspond to the field notes in the deed, except that in the grant the word "varas" is used to express the measurement instead of "yards," and the Supreme Court says that was an evident mistake, and uses the following language:

"It will be seen that the only difference in the description of the deed and of the original grant is that the grant to which reference is made by the deed makes it more definite by describing particularly the northeast corner of the survey by calling for bearing trees that are marked so that they can be identified. A certified copy of the original English field notes in the General Land Office was also introduced by both parties, and correspond with the description in the deed and in the grant, except that the field notes describe the corners with more accuracy and detail than was done either in the deed or the grant. The field notes and the grant, being referred to in the deed for a more particular description of the land, render the description in the deed valid, if the description in the papers referred to is sufficient to describe the land."

The land as described in the amended plea of intervention, as above stated, and upon which the case was tried, is identical with the land described in the field notes on file in the General Land Office at the time when the deed from Collins to Warren was made, same being as follows:

"The land surveyed to colonist Geo. T. W. Collins is situated on the west bank of the Neches river where a stake was driven and mound of earth raised around it, forming the first landmark of the survey, from which a white oak 24 inches in diameter bears north, 11 30' east, 4⁹/₁₀ varas, and an elm 12 inches in diameter bears north, 43 30' west, 7⁶/₁₀ varas distant; thence west 9,209 varas were measured, and a stake driven, forming therein the second corner, from which a pine 12 inches in diameter bears north, 28 45' east, 4⁵/₁₀ varas distant, and another pine 11 inches in diameter bears north, 72 east, 8 varas distant; thence north 2,500 varas were measured, driving a stake for the third landmark, from which a pine 10 inches in diameter bears south, 43 east, 16 varas distant, and a pine 8 inches in diameter bears south, 1 east, 17 varas distant; thence east 10,929 varas were measured, and a stake was driven forming the fourth and last landmark on the west bank of said Neches river, it being also the S. E. corner of a survey whose line trees are marked T. C.; thence descending said river along its various courses to the corner, where this survey was begun, thus completing the survey of the league of land which you ordered me to have surveyed. Six labors of said land belong to the class of arable land, and the nineteen remaining ones to that of pasture land, its configuration being that represented on the map which, in duplicate, I inclose to you."

[1] The language used in the Kimball Case, as has been stated, is almost identical with the language used in the conveyance in the instant case. We see no reason why an extended opinion should be rendered by this court, in the light of the opinion in the Kimball Case, above referred to. That case is, to our minds, decisive of the question here presented. It is our opinion that if the language which was used in the conveyance set out in the Kimball Case, together with the references therein, was sufficient to identify the land upon the ground, that the same can be said of the conveyance in the instant case. It is true that reference is only made to the description in the original grant in the Land Office, without stating "of the Republic," but this objection is of such character that we do not deem it necessary to seriously consider the same.

The contention is made that the deed referred to, from George T. W. Collins to David O. Warren, does not sufficiently describe the land, and is indefinite, because (a) it does not say what league is intended to be conveyed; (b) it does not indicate within 200 miles where the league is; (c) the best and only description is that it is west of the River Neches, in Zavalla's colony; (d) it does not say whether the league is one that was granted to George T. W. Collins, or one that he had purchased, and it is urged that it is not shown that no other grants were made on the same day, March 16, 1835, and it is further urged that, so far as this record shows, there may have been a dozen, and that George T. W. Collins may have acquired by purchase and become the owner of all of them at the date of this sale; and (e) it does not say what league was granted or what was done by George Antonio Nixon; and (f) it does not show where and at what place the original is on file, and it is argued that suppose a stranger took hold of the matter, and should find the old original conveyance and read the description, that he could not, by any possible chance, have any idea what land was described; that no man could come into this record unacquainted with the idea as to the land that was attempted to be conveyed, and find, from its description, where it was; that there is not a single circumstance, except perhaps a suspicion as to the land intended to be conveyed, and they illustrate this by the fact that the appellants themselves were in doubt, and, therefore, representing the same title, they had no confidence in their contention, and settled the matter by dividing between themselves the land equally; again, they urge that the grant does not say what league is intended; that it does not say what league was granted; that it does not say to whom granted; it does not say where the General Land Office is in which the original title is on file; that it does not say where the league is situated, except west of the River Neches, in Zavalla's colony, and that the description would perhaps fit equally as well any league west of the Neches river, from one end to the other, no matter how far or how close to the bank, so long as it was in Zavalla's colony. It is further contended that while it is true that something is said about March 16, 1835, it does not say it was granted on that date, and that, by reason of the above facts, the description in the deed is so vague and uncertain that it is void for failure of sufficient description;

and we are cited to the case of Coker v. Roberts, 71 Tex. 602, 9 S. W. 667, to sustain their contentions. In the Coker v. Roberts Case the description was as follows:

"All that certain tract of land lying on Jones creek, and bounded as follows, viz., on the west by Isaac Garner's survey, and on the north by Jefferson Jones' pre-emption survey."

This is the whole description of the land, and the court said:

"It is not stated in what state or county the land is situated; it does not state the name of the survey or grant, the number of acres, or any matter from which the land can be identified. Upon examination we see that the patent offered in evidence places the Coker pre-emption on the east of the I. Garner survey; but there is no call for the Jones pre-emption or Jones creek, and there was no attempt to locate them by parol. There is no reference to the patent or any other instrument by which any land could be identified by the description in the deed. The ambiguity is patent and cannot be aided by averment or proof. The rule is that a deed, to be valid, must describe the land by its terms, or give data from which the description may be found and made certain. There is nothing referred to in the deed that could help the description, and in such case parol evidence is not admissible to show what land was intended to be conveyed. The deed is void upon its face for want of certainty in description. Norris v. Hunt, 51 Tex. 612; Cleveland v. Sims, 69 Tex. 154, 6 S. W. 634; Bitner v. Land Co., 67 Tex. 342, 3 S. W. 301; Terrell v. Martin, 64 Tex. 125."

In our opinion the case cited is not applicable to the facts in the instant case. The land is described in the conveyance, which was made in the republic of Texas and county of San Augustine, as being a league of land west of the River Neches, in Zavalla's colony, as the title which was by George Antonio Nixon, commissioner for said colony, on the 16th day of March, A. D. 1835, and for a more particular description reference is made to the original title now on file in the General Land Office, clearly of the republic of Texas, and reference being so made, and the field notes being at that time on file in the Land Office, which field notes are an exact copy of the land as described in the petition of intervener, who was plaintiff in the court below thereby identifying with certainty the land upon the ground. In other words, from the grant in the instant case it is certain that the land was in the republic of Texas; that it was west of the Neches river; that it was in Zavalla's colony; and reference was made to an exact description of the same, then on file in the Land Office of the republic.

Following the introduction of the deed from Collins to Warren, the following deed was introduced:

"Republic of Texas, San Augustine County.

"Know all men by these presents that I, David O. Warren, of the county and republic aforesaid, for and in consideration of the sum of four thousand dollars cash to me in hand paid by Cyrus S. Aiken, the receipt whereof is hereby acknowledged to my entire satisfaction, have this day bargained, sold, aliened, enfeafed, and conveyed, and by these presents do grant, bargain, sell, alien, enfeaf, and convey and set over in bona fide sale forever to the aforesaid Cyrus S. Aiken, his heirs, executors, administrators, or assigns, forever, all that certain tract or parcel of land containing three thousand eight hundred and seventy-three acres English measurement, lying and being situated in the county of Menard and on the west side of the Big Neches or Snow river, the same that was originally granted to George T. W. Collins, an old settler of Texas, by the commissioner, George Antonio Nixon, for the colony of Lorenzo de Zavalla, on the 16th day of March, 1835, and by said George T. W. Collins sold to me on the 9th day of July, 1841, and for a more particular description of said land reference is hereby made to the copy of the original title hereunto annexed and made part of this title, and also the sale to me, all of which papers are also delivered to the purchaser, the said Cyrus S. Aiken; and for the aforesaid Cyrus S. Aiken, his heirs, executors, and administrators or assigns, to have and to hold the above-described land to himself, his heirs, and to their entire use, benefit, and behoof, forever, together with all and singular, the rights and hereditaments thereunto belonging or in any wise appertaining. And the said David O. Warren do for myself, my heirs, executors, and administrators, warrant and forever defend the right, title, and claim of said land unto the aforesaid Cyrus S. Aiken, his heirs and assigns, against the claim or claims of all persons whatsoever claiming or pretending to claim the whole or any part thereof. In testimony whereof I, the said David O. Warren, have hereunto set my hand and affixed my seal this the 10th day of January, A. D. 1842.

                "David O. Warren. [Seal.]

"Signed, sealed, and delivered in the presence of

        "John P. Benson.
        "Wm. C. Edwards."

Following this, were offered in evidence, showing claim of title, and showing their dealings with the land, at least 20 instruments, from those claiming under Cyrus S. Aiken. All of these instruments were on file long before the power of attorney from Collins' heirs to Mantooth and Collins, in the county in which the land was situated, and under the same parties were living upon and claiming a part of the land in controversy. Moreover, the power of attorney executed by A. L. Collins and others to Mantooth & Collins is in the following language:

"State of Texas, County of Angelina.

"Know all men by these presents, that we [omitting name of grantors] have made, constituted, and appointed, and by these presents do make, constitute, and appoint, E. J. Mantooth & C. B. Collins, and each of them, jointly and severally, of the county of Angelina, state of Texas, our true, sufficient, and lawful attorney for us and in our name, place, and stead to enter upon the following tract of land, and being all of that certain tract or parcel of land containing one Spanish league of 4,428 acres of land, more or less, according to the original survey, lying and being situated in the county of Tyler, on the west bank of the Neches river, and being the league of land granted to George T. W. Collins as his headright on the 16th day of March, 1835, by the state of Coahuila and Texas as a colonist in the colony of Lorenzo de Zavalla, and described by metes and bounds as follows: [Omitting description of the entire Collins league.] And being the only league survey under the name of George T. W. Collins in Tyler county, and for a more minute description by metes and bounds reference is hereby made to the field notes in the original grant from the Mexican government to said George T. W. Collins, and to demand possession of the same, and, if necessary, to institute suit or suits as to our

said attorneys shall deem proper for the recovery of the possession of said land, and to employ additional counsel to prosecute or assist in prosecuting the same, and also our attorney in fact for us and in our name to bargain, grant, sell, and convey to any person or persons, and for any sum of money or other consideration as to them may seem most to our advantage, said above-described tract of land; to receive the consideration for which said land may be sold, and for the same to execute in our name proper receipts and acquittances, and to make and execute to the purchaser or purchasers thereof such deed or deeds of assurance of title to said tract of land; with such covenants and warranties as to our said attorneys may seem proper, giving and granting unto our said attorneys full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises as fully to all intents and purposes as we might or could if personally present with full power of substitution and revocation, hereby ratifying and confirming all that our said attorneys or their substitute shall lawfully do or cause to be done in the premises by our said attorneys, in locating, recovering, and attempting to recover said land above described, and the services herein rendered, we hereby grant, sell, and convey, and do by these presents grant, sell, and convey, to our said attorneys, E. J. Mantooth and C. B. Collins, an undivided one-half (½) interest in and to all the right, title, interest, and claim of every kind, character, and nature which we own in and to the above-described tract of land. [Omitting signatures and acknowledgments.]"

The deed from Collins et al., executed under the power of attorney by Mantooth & Collins, is as follows:

"For and in consideration of the sum of three thousand dollars to us cash in hand paid by E. J. Conn, the receipt of which is hereby fully acknowledged and confessed, have granted, sold, and conveyed, and by these presents do grant, sell, and convey, unto the said E. J. Conn, of the county of Angelina, state of Texas, all that certain tract or parcel of land containing one Spanish league of 4,428 acres of land, more or less, according to the original survey, lying and being situated in the county of Tyler, on the west bank of the Neches river, and being the league of land granted to George T. W. Collins, as his headright, on the 16th day of March, 1835, by the state of Coahuila and Texas, as a colonist in the colony of Lorenzo de Zavalla, and described by metes and bounds as follows: [Omitting description of the entire Collin's league.]

"The words 'grant' or 'convey,' as used in this conveyance, shall not include the incumbrances of taxes, assessments, and other liens upon real property.

"To have and to hold the above-described premises, together with all and singular the rights and appurtenances thereto in any wise belonging, unto the said E. J. Conn, his heirs and assigns, forever; and we do hereby bind ourselves, our heirs, executors, and administrators, to warrant and forever defend all and singular the said premises unto the said E. J. Conn, his heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof, by, through, or under us, but not further. [Omitting signatures and acknowledgments.]"

In addition to the Kimball Case, our attention has been called to the case of Mardes v. Meyers, 8 Tex. Civ. App. 542, 28 S. W. 693. In the last-named case the language in the original deed was as follows:

"Republick of Texas, County of Nacogdoches.

"This indenture, made this twentieth day of November, in the year of our Lord one thousand eight hundred and thirty-seven, by and between Abner Mardes, of the county of Liberty and republick afs., of the one part, and David Brown, of the county of San Augustine, and republick afs., of the other part, witnesseth: That the said ――――, for and in consideration of the sum of five hundred dollars current money of the republick afs., to him in hand paid at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, have this day granted, bargained, and sold, and by these presents do grant, bargain, sell, and convey, unto David Brown, his heirs and assigns, forever, all that tract or parcel of land lying and being situate in Nacogdoches county, having such shape, form, and landmarks as are set forth in the title of possession as given by Geo. A. Nixon, especial commissioner for Joseph Vehelin's colony, of which the said Mardes was a colonist. To have and hold the above-described land and premises unto the said David Brown, his heirs and assigns, forever, in fee simple."

The court in passing on the case used the following language:

"We are of the opinion that the deed is sufficient, in connection with other proper evidence in aid thereof, to convey the league of land granted by the Mexican government to Abner Mardes. It purports to be an indenture between Abner Mardes, of the one part, and David Brown, of the other part. Abner Mardes covenants to warrant the title, and it is signed 'Abner Mardes.' The clerical omission of the name after 'said' in the granting clause may be easily supplied by the rest of the deed, from which Abner Mardes clearly appears to be the grantor."

The court also further says:

"In Stone v. Sledge [87 Tex. 49] 26 S. W. 1068 [47 Am. St. Rep. 65], it nowhere appeared from the deed that Mrs. Stone was to join her husband in its execution. It appeared from the evidence in this case that, at the time the deed purported to have been executed, it was customary to fill out blanks in manuscript deeds previously prepared in making conveyances, and all of the words which appear to have been written in fresher or blacker ink than the rest of the deed are such as would be used in filling up the blanks in a general form previously prepared, and to not subject the deed to suspicion. The land conveyed is not described in the deed except by reference to 'the title of possession as given by Geo. A. Nixon, especial commissioner for Joseph Vehelin's colony, of which the said Mardes was a colonist.' If the 'title of possession' referred to can be identified, it is proper to refer to it for a more definite description; and, in order to identify it, the words, 'of which the said Mardes was a colonist,' should not be rejected as mere description of the person if they can be made applicable to a particular tract of land. From a knowledge of the early colonization laws of Texas, we know that, as a colonist of Joseph Vehelin's colony, Abner Mardes would be entitled to receive a grant of land; and the words above quoted would have reference to such a grant, and could have application to no other. In the language used, the grantor says, in effect, that he conveys the grant made to him as a colonist in Joseph Vehelin's colony, which would be sufficient to convey the land. There does not seem to be anything in the objection that the land was not situated in Nacogdoches county as it then existed."

[2, 3] The court held in the instant case that there was patent ambiguity on the face of the instrument itself. Ambiguity is defined in Words and Phrases, p. 367, as follows: "As duplicity, indistinctness, an uncertainty of meaning or expression used in

a written instrument." There are two kinds of ambiguity, to wit: A latent ambiguity, where the writing appears on the face of it certain and free from ambiguity, but the ambiguity is introduced by evidence of something extrinsic, or by some collateral matter out of the instrument; a patent ambiguity, which is the ambiguity apparent on the face of the instrument. Patent ambiguity is further defined as "one which remains uncertain after all the evidence of surrounding circumstances and collateral facts admissible under the proper rules. of evidence is exhausted." Words and Phrases, p. 5232. It is further defined in the same volume, same reference, as "one which appears on the face of the instrument, and that which occurs when the expression of an instrument is so defective that a court of law which is obliged to put a construction on it, placing itself in the situation of the parties, cannot ascertain what they meant."

[4] However, it is sufficient to say that in the case of Houston Oil Company v. Kimball, above referred to, the language of the grant was equally uncertain with the grant in the instant case, to furnish data with sufficient certainty from which the land could be identified upon the ground. Even as an original proposition, it appears to this court that the opinion in the Kimball Case was correct. Evidently something had been omitted, and that which had been omitted could, with reasonable certainty, be made certain. Reference was made to file in the General Land Office, in which no person could be deceived. The reference made the description in the General Land Office a part of the conveyance itself.

[5] An examination of the files of the Land Office would have shown that there was a grant of a league of land to Collins, would have made the description of the land sure and certain, would have demonstrated the fact that it was issued upon the day and date which was described in the conveyance; and the fact that the conveyance .was written in the republic of Texas, that it referred to file in the Land Office, is persuasive that it was the Land Office of the republic referred to; and the fact alone that the words "of the republic" were omitted does not, in our opinion, raise a serious question as to the intention of the parties, or what was meant by the instrument itself. The testimony in this case, as reflected by the record, shows that Collins himself lived to be perhaps 80 years old, in Angelina county. He never made any further claim to the land in controversy, and there was no other conveyance of record from him.

[6] The burden of proof was upon the plaintiff in this case, who was the intervener originally. It seems that no effort was made to show that there was any other grant made, upon the exact date as the one alleged to have been made, to Collins. The record is silent as to whether Collins had ever purchased or owned land, except by reason of his being a member of Zavalla's colony, or that he conveyed any other land in Texas.

[7] It cannot, therefore, in our opinion, be said that there was a patent ambiguity in the instrument in question, for the reason that a court placing itself in the situation of the parties can ascertain what they meant, and that, after all the evidence and surrounding circumstances and collateral facts which are admissible under the proper rules of evidence have been admitted, it cannot be said that the conveyance was a patent ambiguity, as held by the court below.

We have, perhaps, gone to unnecessary length in the preparation of this opinion. However, it has been so earnestly and variously insisted that the action of the lower court was correct that we have deemed it well to go into the matter more at length.

[8] With reference to the matter of being an innocent purchaser, it may be well to say that, in the opinion of this court, the various conveyances made and of record prior to the time appellee received his conveyance from Mantooth & Collins, as reflected by the said records, in the county where the land was situated, is ample evidence, and, to our minds, sufficient to put a proposed purchaser upon notice that the land was claimed and owned by other parties. We do not deem it helpful to set out in detail the testimony on this point. It is sufficient to say that the evidence reflected that the deed records of Tyler county showed a deed from Collins to Warren dated July 9, 1841, the deed from Warren to Aiken dated January 10, 1842, and the various deeds and instruments executed by the heirs of said Aiken, affecting said land, so that Conn had constructive notice given him by the deed and other records of Tyler county that all the title and claim of George T. W. Collins had passed from him, and had been acquired by the defendants in this case.

Believing, as we do, that the action of the lower court was error in finding for the appellee, in holding that the deed dated July 9, 1841, from George T. W. Collins to David O. Warren did not convey the George T. W. Collins league of land to said Warren, and in holding that the said deed referred to was insufficient in the matter of description to convey the George T. W. Collins league of land, and also in holding and finding as a fact that the appellee, E. J. Conn, was an innocent purchaser for value, without notice and in good faith, of any part of the land in controversy in this cause, we feel it our duty to reverse the judgment of the lower court, and to here render judgment in favor of appellants. It is so ordered.