ELSIE PHILPOTT and LEILA BROWNFIELD, Contestants and Appellees, v. W. M. JONES, ET AL., Proponents and Appellants.

Wills: TESTAMENTARY CAPACITY: PRESUMPTION: BURDEN OF PROOF.
1  Where a will has been formally executed and attested, as required by law, the presumption arises that the testator had sufficient mental capacity, and the burden is upon the contestants to establish his want of capacity.

Same: TRIAL DE NOVO. A will contest is not triable *de novo* on appeal,
2  but the verdict of the jury when supported by evidence sustaining their finding is conclusive.

Same: TESTAMENTARY CAPACITY: EVIDENCE. Mere age, feebleness or
3  failing memory of testator, or exclusion from his bounty of some or all of his legal heirs, or inability to make contracts or engage in intricate business matters, will not be sufficient to defeat a will on

the ground of mental incapacity, if the testator retains sufficient mentality to comprehend the objects of his bounty, the nature and extent of his estate and the disposition he wishes to make of it. However, incapacity to make a will may exist though to outward appearances a testator may seem to non-experts with whom he may come in casual contact to be competent. Evidence held to sustain a finding of incapacity.

**Same:** EVIDENCE: PECUNIARY CONDITION OF CONTESTANT. The contestant of a will may show his pecuniary condition, where it appears that such condition was known to the testator at the time of making the will.

**Evidence:** HYPOTHETICAL QUESTIONS. It is necessary that the record contain some evidence of the facts assumed in a hypothetical question, but they need not be established by the testimony; and only the substance of the testimony need be stated in the question. Nor is it necessary that every fact concerning which evidence has been offered be included in the question, where the omitted facts were brought to the attention of the witness and jury by the examination of the witness.

**Same:** EVIDENCE NOT RESPONSIVE: RIGHT TO OBJECT. Where the answer of a witness is competent, relevant and material to the issue, the objection that it is not responsive to the inquiry can only be raised by the party propounding the question.

**Same:** MENTAL CAPACITY: OPINION EVIDENCE: FORM OF ANSWER. The answer to a hypothetical question touching the mental capacity of a testator, that he was not a normal individual, was not competent to transact business, and that personally the witness would not take the conclusion or judgment of such an individual as being sound, while not expressed with technical nicety, sufficiently expressed the opinion that testator was not of sound and disposing mind.

**Same:** INSTRUCTIONS: INVASION OF PROVINCE OF JURY. A requested instruction selecting a portion of the evidence and seeking to give it undue prominence followed by an attempt to minimize its probative force on the theory that standing alone it would not establish the fact sought to be proven, was properly refused. Thus in the contest of a will it would be improper for the court to take up such questions as the unreasonableness of the disposition of the property, the exclusion of legal heirs or members of the family entitled to testator's bounty, or that those entitled to his bounty were in poor financial circumstances, and treat each matter in its probative force as standing alone, although such matters are

entitled to consideration along with the other evidence in determining the testator's mental capacity.

**Same.** There is no legal presumption that a physician who attended testator and treated his physical infirmities is presumed to know his mental condition better than one trained in the treatment of mental diseases; and the requested instruction in this case calling particular attention to the evidence of the attending physician, and suggesting the thought that he was thus better qualified to speak on the subject, without referring to his qualification or experience was properly refused.

**Same:** INSTRUCTIONS: CONFORMITY TO EVIDENCE. Where it clearly appeared that testator knew the financial condition of the contestants of his will before the will was made, an instruction that the financial condition of contestants might be taken into consideration, without confining its consideration to such condition as was known to testator, was not erroneous.

*Appeal from Des Moines District Court.*—HON. W. S. WITHROW, Judge.

TUESDAY, APRIL 14, 1914.

CONTEST over the probating of a will.— *Affirmed.*

*Power & Power,* for appellants.

*Seerley & Clark,* for appellees.

GAYNOR, J.—On February 20, 1912, there was filed in the district court of Des Moines county, Iowa, an instrument purporting to be the last will and testament of W. E. Jones. Due notice of probate was given by the clerk of the court by publication, as required by section 3284 of the Code of 1897. No other or further notice was given. On the 15th day of April, 1912, Elsie Philpott and Leila Brownfield, granddaughters of the testator, appeared and filed objections, alleging as a ground therefor that the said W. E. Jones, at the time of the execution of said instrument, was not competent to execute a valid will;

that he lacked testamentary capacity. Upon the issue thus tendered, the cause was tried to the court and a jury. W. M. Jones, W. H. Myers, Mary E. Myers, Sarah Fie, and Ann Featherby appeared in said proceedings, as proponents, but filed no pleadings. The cause having been fully submitted to the jury, the jury returned a verdict for contestants, finding that the instrument offered as the last will and testament of W. E. Jones should not be admitted to probate. The jury further found, in answer to a special interrogatory propounded by the court, that the contestants had proven, by a fair preponderance of the evidence, that, at the date of the execution of said instrument, W. E. Jones was not of sound mind. Thereafter, on the 30th day of November, 1912, proponents filed a motion for a new trial, which was, by the court, overruled. Thereupon the court entered an order refusing the probate of the instrument offered as the last will and testament of W. E. Jones, and proponents appeal.

The main contention of appellants in this case is that the evidence offered and submitted by contestants failed to overcome the presumption created by the due execution of the instrument offered for probate, and failed to establish want of testamentary capacity on the part of the said Jones. Second, that even if contestants' evidence did tend to show want of testamentary capacity, the rebuttal evidence offered by proponents preponderated, and that a preponderance of all the evidence clearly established testamentary capacity, on the part of the testator, at the time the instrument was executed.

It is true that the burden of proof rests upon contestants to show want of testamentary capacity, for the law presumes that a party making a will has, at the time of the making of it, sufficient mental capacity to do so, and one who alleges to the contrary assumes the burden of proving his contention. When an instrument of this character is filed with the clerk for probate, and the formal execution of it is shown, where it is shown to have been duly executed and attested, as required

1. WILLS: testamentary capacity: presumption: burden of proof.

by law, the burden shifts to the contestants. See *Stephenson v. Stephenson,* 62 Iowa, 166; *Hull v. Hull,* 117 Iowa, 744; *Ross v. Ross,* 140 Iowa, 51; *Beebe v. McFaul,* 125 Iowa, 514.

As to whether or not contestants have carried the burden to a successful issue is not a question which we are called upon to determine. This case is not triable *de novo* here. We are bound by the finding of the jury, who are triers of fact, if there is evidence supporting and sustaining their finding upon the ultimate question of testamentary capacity. Where reasonable minds, searching for the truth, might reasonably differ upon the record made as to what the ultimate fact is about which there is controversy, it is, and always must be, a question for the jury. Where the record presents a state of facts from which an ultimate conclusion must be drawn, and reasonable minds might differ as to what conclusion should be drawn from the ultimate facts proven, it then becomes a jury question.

2. SAME: trial de novo.

The ultimate fact here to be determined is, Did the testator in this instrument possess a mind that retained full knowledge of the property he possessed, an intelligent perception and understanding of the disposition he desired to make of it and the persons that he desired to be the recipients of his bounty, with capacity to recollect and comprehend the nature of the claims of those that are excluded from participating in his bounty, a mind capable of exercising judgment, reason, and deliberation, and capable of weighing the consequences of his will to a reasonable degree and the effect of it upon his estate and family, at the time of the execution of the will? It is not necessary that he be competent to make contracts or transact business generally, nor that the mind retain all the vigor and force incident to youth, or that which attends upon robust physical health, in order that he may have this capacity. The mere fact, standing alone, that a person is old, in feeble health, or that his memory does not possess the vigor of youth, or of earlier years, or the fact that he has excluded from his bounty

3. SAME: testamentary capacity: evidence.

some or all of his legal heirs, or that his mind has reached that uncertain stage that would render him incapable of making a contract, or engaging in complex or intricate business matters, will not, in and of themselves, defeat a will executed by him if, notwithstanding this, he retains sufficient mind to comprehend the natural objects of his bounty, the nature and extent of his estate, and the disposition he wishes to make of it, with the full appreciation of those whom he desires to be the recipients of his bounty. See *Perkins v. Perkins,* 116 Iowa, 253; *In re Evans' Estate,* 114 Iowa, 240; *In re Allison's Estate,* 105 Iowa, 130; *Webber v. Sullivan,* 58 Iowa, 260; *Meeker v. Meeker,* 74 Iowa, 352.

*In Re Estate of Allison, supra,* this court said, in a case involving testamentary capacity: ''The conclusion depends much on the credit to be given to particular witnesses, not so much with reference to their veracity as with reference to their conclusions from observations and particular facts coming to their knowledge. The line between competency, and incompetency, or that shows a testamentary capacity, is always traced with uncertainty, and the findings in most cases are justified only as the best solution of a doubtful problem. . . . However the facts might be found, there would be the conviction that it was doubtful. It is not to be properly said that the evidence is conclusive either way. With such conditions the finding of the jury should stand, and especially after the district court has declined to interfere.''

The condition of the human mind at any stage of human existence is difficult of proof; perhaps the most difficult of any with which courts and juries are compelled to deal. Mental unsoundness, whether resulting from old age or physical sickness, is so various in its character and so different in its manifestations that it is often difficult for the most experienced experts, after most careful and thorough investigation, to trace it to any sufficient cause, or define its extent or its effect upon the conduct of the individual. Even the most experienced alienists, with all the facts before them, touching the conduct

of the individual concerning whose mental condition the investigation is instituted, are often found widely differing in their conclusions as to the then condition of the mind under consideration. It has been said that the fact that the testator transacted his own business, and to all outward appearances seemed to be of sane and sound mind to those with whom he came in contact in business or in a social way, while competent to be considered on the question of sanity, does not, of itself, conclusively establish sanity. Mental unsoundness may exist which would render a man incompetent to make a will, notwithstanding to all outward appearances he seems to be sane to those with whom he comes in casual contact, who are not experts upon the question.

We have examined this record with care for the purpose only of ascertaining whether or not in the record there is sufficient evidence upon which a jury might reasonably predicate a conclusion that this testator, at the time of the execution of the will, did not have that testamentary capacity which, under the rules generally adopted, was sufficient to enable him to make a binding will. It is difficult to lay down any rule sufficiently broad in its application and sufficiently comprehensive in its scope that it may serve as a certain guide in determining whether or not, in a particular instance, the testator had, or had not testamentary capacity, but, from the facts, as we gather them from a careful reading of this record, studied in the light of the rules laid down for guidance in matters of this kind, we can only reach the conclusion that the record presents a state of facts from which reasonable minds might reach different conclusions. We do, however, find that there is sufficient evidence to justify the jury in its finding as to the ultimate fact.

Proponents, however, contend that the court erred in the submission of the cause to the jury, to proponents' prejudice; that prejudicial errors were committed by the court in the trial and submission of the cause that entitled proponents to a retrial. We may not dispose of the errors complained of in

the order of their assignment, but will endeavor to dispose of each in what appears to us to be the logical order of sequence.

It appears that the court allowed the contestants to show their pecuniary condition at the time of the execution of the will. It appears that this testimony was admitted, subject to a

4. SAME: evidence: pecuniary condition of contestant.

showing that at the date of the execution of the will the decedent had knowledge of such condition, and it is complained that no testimony was offered from which the jury could find that the testator had such knowledge at that time, and that there was error in the admission of this testimony in the absence of such showing. Without stopping to analyze this testimony, we have to say that under the rule laid down in *Cash v. Dennis,* 159 Iowa, 18, citing *Mileham v. Montagne,* 148 Iowa, 476, this testimony was admissible, if the fact was within the knowledge of the testator at the time of the making of the will. In *Cash v. Dennis,* it is said: ''The law seems to be well settled that the jury, in determining the ultimate question submitted in a case like this, has a right to consider any evidence showing that the will was just or unjust, reasonable or unreasonable, natural or unnatural, the natural object of testator's bounty, the financial condition of the different members of his family at the time of the execution of the will, the extent of the estate of the testator, and apparent equality or inequality in the provisions of the will, although no one of these matters, standing alone, would justify a jury in finding want of mental capacity.''

An examination of this record shows that the pecuniary condition of these contestants was brought to the knowledge of the testator before the time of the execution of the will. This is shown by the testimony of the mother of contestants, as well as by the testimony of the contestants themselves.

It is next contended that there was error in the action of the court in refusing to strike from the record the answers

of Dr. Applegate who was called as an expert medical witness, and to whom hypothetical questions were propounded. It is said that the questions propounded contained facts of which there was no proof. An examination of these questions fails to disclose the error of which proponents complain. It is not necessary that the facts be established by the testimony in order to justify an assumption of their existence for the purpose of a hypothetical question, but it is necessary that there be some evidence in the record of the existence of the facts.

5. EVIDENCE: hypothetical questions.

It is not necessary that every fact, concerning which testimony has been offered, be included in a hypothetical question, but only such facts, concerning which evidence is offered, as bear upon the mental condition of the testator at the time of the making of the will. It is not necessary that the testimony of a witness touching any particular fact, as it appears in both direct and cross-examination, be included in a hypothetical question to make it proper, but that the substance of his testimony, that which it tended to show, need only be stated.

The complaint here seems to be that counsel for contestants, in propounding the hypothetical question to Dr. Applegate, omitted some matters, shown, by the testimony of a witness, upon which the hypothetical question was predicated, and that this omission destroyed the question as a basis for the final judgment as to the capacity of the testator. If the contention of counsel were to be adopted as the correct rule in propounding hypothetical questions, it would tend to confuse, rather than enlighten the jury as to the facts upon which the question was predicated. But, however this may be, we are satisfied that if anything was omitted from the hypothetical question, the omitted portions were fully brought to the attention of the witness and jury on cross-examination, and the further examination discloses that the omitted portions were all unimportant matters.

We find no prejudicial error in this respect.

It is next contended that the court erred in overruling proponents' motion to strike the answer of Dr. Applegate to the hypothetical question propounded to him, because the answer was incompetent and not responsive, the answer being substantially as follows: "Mr. Jones was not a normal individual by any means, and not competent to transact business, in that, personally, I would not take the conclusion, or opinion, or judgment of such an individual as being sound." The objection urged at the time was that the answer was not responsive and incompetent, and based on the influence and impression the facts stated in the hypothetical question would have on Dr. Applegate personally, and is not an expression of the opinion of the witness as to the mental condition of the decedent. In urging this objection, reliance is had upon what was said by this court *In Re Will of Stufflebeam*, 135 Iowa, 341, but a reading of this case discloses that the question of the competency or relevancy of the testimony was not urged. What was said there related, not to its competency and relevancy, but to its probative force, which presents an entirely different question. The fact that this answer was not responsive to the question cannot be taken advantage of by any one but the party propounding the question. If the answer is competent, relevant, and material to the issue, and the party propounding the question does not object to the answer, on the ground that it is not responsive to his question, his opponent cannot do so for him.

6. SAME: evidence not responsive: right to object.

The one objection that can be considered that was at the time urged by proponents is that the answer is incompetent because it states what he would do, personally, in regard to conditions such as are stated in the hypothetical question. The objection went to the whole answer, and not to the portions now complained of. In the answer given by the witness, he stated, in substance, that it was his opinion, based on the facts stated in the hypothetical question, that testator was not a normal

7. SAME: mental capacity: opinion evidence: form of answer.

individual, and by reason of his condition not competent to transact business. The witness stated, in substance: ''If all the statements that you have incorporated in the questions are facts, . . . I am of the opinion that he wasn't a normal individual by any means, and not competent to transact business.'' The further statement that he would not take the conclusion, or opinion, or judgment of such an individual as being sound, or that such an individual, as was described in the hypothetical question, was, because of unsoundness of mind, incapable, in the opinion of the witness, of reaching a sound conclusion, or forming a sound opinion or judgment, does nothing more, so far as it reaches in its probative force, than disclose the opinion of the witness upon the facts stated that the testator was not of sound mind at the time of the execution of the will. Words are intended to convey ideas. To convey to one mind the thoughts of the other mind. It is the idea conveyed, through the instrumentality of speech, that is moving and controlling, and has probative force as an expression of opinion, and the answer of the doctor in this case, though not worded with the technical nicety which commands approval, was sufficiently distinct and definite to convey to the mind of the jury the thought, sought to be elicited through his testimony, that the testator was not, at the time of the execution of the instrument, of sound and disposing mind. We think no prejudicial error exists in the ruling of the court on this matter.

It is next contended that the court erred in refusing to give to the jury certain instructions asked by proponents, known in the record as Nos. 10 and 12. These instructions are objectionable, and were rightly refused

8. SAME: instructions: invasion of province of jury.

because they attempt to separate certain portions of the contestants' evidence which, if accepted by the jury as true, would tend to show mental incapacity, and seek to give to such portions so separated undue prominence in the consideration of the jury, followed by an attempt to minimize or negative their probative force,

on the theory that, standing alone, they would not establish the ultimate conclusion sought to be established by all the testimony. It is not claimed, and could not be well claimed, that any of the matters referred to, in and of themselves, would establish want of testamentary capacity. The evidence, as a whole, should be considered by the jury in determining the ultimate question, and it is not proper, in any case, for the court to select some portions of the testimony which, in and of itself, may have some probative force, and then attempt, by instructions, to minimize this testimony to the point of its probative force when standing alone. Thus that the disposition of the property was unreasonable; that the testator was very old; that he excluded some of his legal heirs from his bounty; that some of the members of his family, who should be the natural objects of his bounty, and who were excluded, were in poor financial circumstances. Each of these matters may be considered by the jury, and they may be so told, but it is not proper for the court to take up each question by itself and treat it, in its probative force, as if standing alone. Thus, in instruction No. 10, the court was asked to say to the jury:

Testimony has been introduced, and has not been contradicted, that in discussing the provisions of the will, the making of which was contemplated by W. E. Jones, he stated that it was not worth while for him to give the contestants a considerable share of his estate because they were extravagant and would waste it. Testimony has also been introduced, and has not been contradicted, that he felt aggrieved over the apparent neglect that he had received from the contestants. In determining whether the provisions of the will are so unreasonable as to create a presumption that W. E. Jones was of unsound mind, it is not necessary that the facts were as he supposed at the time of the execution of the will, and if you find from the evidence that W. E. Jones was influenced in the provision that he made for the contestants, by the opinion that any part of his estate he gave to them would be wasted, or if he felt aggrieved because of the apparent neglect, and for that reason made such provision, that would not show mental unsoundness, even if such opinions were unjustified,

and the facts were not as he supposed them to be. W. E. Jones owned the property disposed of and had the right to make such disposition of it as he saw fit.

This instruction, we think, invaded the province of the jury, and seeks to limit the probative force of such testimony unreasonably. If the facts set out in the instruction, claimed to have been proven without contradiction, were as stated, but were not in fact true, and Jones had no reasonable ground for believing them to be true, the jury might well have considered such opinions entertained by him as substantial evidence of the existence of the very fact contended for by contestants.

In instruction 12, asked by the proponents, the court was asked to say to the jury: "The attending physician is presumed to know the state of the mind of his patient, and these are facts that should be considered by the jury in determining the weight that should be given to their testimony." It appears in this case that physicians were called who had attended the deceased during the years of his sickness; that they were called as witnesses to testify on behalf of proponents. There were other doctors called, as experts, who had not attended him during his sickness, and the purpose of this testimony was to emphasize and give prominence and greater probative force to the testimony of the doctors who attended him than to the others who had not attended him, but who testified for contestants, and this without reference to prior training or experience in matters of this kind. There is no presumption that a physician who is called to attend upon a sick man, to treat him for his physical ailments, is better qualified to testify, as to the mental condition of the patient, from the mere fact of attendance upon his physical sickness, than is one who is trained to the treatment, and who has large experience in the treatment, of mental diseases. We think here, too, counsel sought to have the court invade the province of the jury. The weight to be given to

9. SAME.

the testimony of a witness depends upon too many things to justify the court in limiting its probative force to one particular fact.

In proponents' complaint of the court's refusal to give instruction No. 10, they rely upon *Mallow v. Walker*, 115 Iowa, 242, in which the court said: ''Walker seems to have had sufficient mind to determine for himself what he wanted to do, and to carry out his purpose with reference to the disposition of what property remained to him, and it is not for us to pass upon the unreasonableness of such disposition. His antipathy to Mallow, which seems to have been suddenly formed, may have been justified; and, even if unjustified, would not show mental incapacity.''

It is error in counsel to think that every statement made by this court, when passing upon the sufficiency of evidence to justify a conclusion in a particular case, should be incorporated into instructions given to the jury as a guide to the jury in determining the probative force of testimony submitted to it. In *Mallow's* case, this court was discussing the weight of the evidence, in that particular case, for the purpose of determining whether or not the conclusion of the trial court upon the whole record was justified, and the language quoted was used in that connection. It would be subversive to justice to require the court, in its instructions to the jury, to take up separately each item of evidence offered by contestants to show want of mental capacity, and say to the jury, as to each item so separately considered, that it did not, in and of itself, disconnected from all the other testimony, show want of mental capacity. As said before, the evidence is to be considered by the jury as a whole. Each part depends for its probative force largely upon the other testimony submitted upon the issue. Each fact cannot, and ought not, to be considered by the jury alone and disconnected from the other, in the final analysis of the whole case.

In support of proponents' claim that the court erred in refusing to give the twelfth instruction, the proponents rely

upon *In re Winslow's Will*, 146 Iowa, 67. The court in that case approved the following instruction: "Medical men have been called as witnesses in this case, and they gave an opinion as to the mental condition of the said Sarah E. Winslow founded on personal knowledge, observation, and treatment of the deceased. The attending physician is presumed to know the state of mind of his patient. This testimony, and the testimony of medical men, if shown by the testimony to be men of experience in cases of this character, when they have testified touching the mental condition of the testatrix at or about the time of the execution of the will, based upon knowledge, observation, or treatment, may be given by you more weight and consideration than the testimony of non-professional witnesses, but this is a question for you to determine, and you are to say and determine the value and weight that such opinions are to have with you bearing upon the deceased's mental condition, and give them weight accordingly."

Instruction No. 12, asked by proponents, reads as follows: "In this case proponents have introduced testimony, as to the mental condition of W. E. Jones, of practicing physicians who have treated him for a number of years up to the date of his death, and who have given an opinion as to his mental condition, founded on personal knowledge, observation, and treatment. The attending physician is presumed to know the state of the mind of his patient, and these are facts that should be considered by the jury in determining the weight that should be given to their testimony." This instruction was intended to call particular attention to the testimony of the witnesses called by proponents, and to give them a certificate of character and their testimony probative force, without reference to the thought, without suggestion to the jury to consider the fact, as to whether or not these men were shown by the testimony to be experienced in cases of this character; as to whether or not they have shown themselves qualified, by their observation and treatment, to give

a more weighty opinion as to the mental condition of testator. The instruction in the *Winslow* case was only to call the mind of the jury to a distinction between the probative force of the testimony of experts, so shown to be qualified to speak, and that of nonexperts, not so qualified.

Some complaint is made of the instructions given by the court, especially the second and eighth. We have examined these instructions with care, and find they have support in the law as heretofore announced by this court, and it is unnecessary to restate the reasons upon which their approval rests.

The objection to the eighth instruction seems to be that the jury were told in the instruction that they might take into consideration the evidence, as disclosed upon the trial, relating to the financial condition of contestants. It is claimed that the instruction did not confine the jury, in a consideration of this phase of the case, only in so far as a knowledge of the conditions of contestants financially was brought home to decedent. But, as heretofore stated in this opinion, there was ample proof of the fact that whatever the condition of contestants was financially, a knowledge of their condition was brought home to decedent before the making of the will. In view of the whole record, we think there was no reversible error in the failure of the court to limit this phase of the case to the point contended for by appellants.

10. SAME: instructions: conformity to evidence.

A motion was filed by appellants to dismiss this appeal on the ground that all parties interested in the contest were not served with notice of the appeal. In view of the disposition made of this appeal, we do not find it necessary to pass upon this motion.

We would suggest, however, that in contests of this kind it would be well for the court to see to it that all parties interested in the contest, or whose rights might be affected by a determination of the issues raised in the contest, should be served with notice and made parties of record before the trial is permitted to proceed. This will have the effect of

avoiding much litigation, and enable the court, in one proceeding, to determine the rights of all parties, who are affected thereby.

Under the record made here, we find no ground for dismissing the appeal, and the cause, upon the whole record is—
*Affirmed.*

LADD, C. J., and DEEMER and EVANS, JJ., concur. WITHROW, J., took no part.