CAMPBELL v. CAMPBELL et al.
(No. 8189.)

(Court of Civil Appeals of Texas. Dallas. June 7, 1919. Rehearing Denied Oct. 18, 1919.)

1. WILLS ⬸230—NOT RATIFIED BY WIDOW BY DIVISION OF COMMON ESTATE.

A widow, after her husband's will has been admitted to probate, does not lose her right to attack the instrument, on the theory of ratification by securing a partition under Vernon's Sayles' Ann. Civ. St. 1914, art. 3556, of her undevised share of the common estate.

2. WILLS ⬸794—WHAT CONSTITUTES ELECTION.

Recognizing the named executor, accepting an estate devised by the will, but to which one is entitled by law, is not an election to take under a will.

3. JURY ⬸131(15)—SCOPE OF EXAMINATION TO DETERMINE QUALIFICATION.

The general rule that the utmost freedom on examination on voir dire should be permitted to discover any interest, bias, opinion, or other fact tending to disqualify or affect the impartiality of prospective jurors, is limited by the rule forbidding any examination the purpose of which is to have the juror indicate his views on certain facts, and thereby commit him to certain views or conclusions; so that in a will case, want of testamentary capacity being urged, it was proper to exclude a question whether jurors would be influenced by the fact that testator disinherited some members of his family.

4. WILLS ⬸53(9) — THAT TESTATOR DISINHERITED CHILDREN COMPETENT IN DETERMINING INCAPACITY.

Where a will was contested on the ground of the testator's want of capacity, the fact that he unreasonably disinherited some of his children is a matter for consideration.

5. EVIDENCE ⬸564(3) — STANDARDS FOR COMPARISON OF HANDWRITING.

Extrinsic documents not filed in the case or relevant to any issue are inadmissible as standards of comparison of handwriting.

6. EVIDENCE ⬸474(4) — TESTIMONY AS TO TESTATOR'S CAPACITY.

A lay witness who had observed the testator and had been associated with him in business might, in a will contest, where the testator's capacity was attacked, testify that the testator lost his temper, became violently angry, so that he was not responsible for his actions or speech.

7. TRIAL ⬸85 — OBJECTION TO WHOLE ANSWER GOOD IN PART NOT TENABLE.

Though a portion of an answer was not responsive, the overruling of an objection to the whole of the answer does not constitute error, where the inadmissible portion was not excluded from the admissible.

8. APPEAL AND ERROR ⬸882(9) — OBJECTIONS TO EVIDENCE WAIVED.

An appellant cannot complain of the admission of testimony, where on cross-examination of the witness he elicited similar testimony.

9. TRIAL ⬸194(9) — INSTRUCTION REFUSED AS ON WEIGHT OF EVIDENCE.

While exhibition of high temper, eccentricities, and unreasonable prejudices would not, in the absence of other evidence, establish a want of testamentary capacity, yet in a will contest case an instruction that such exhibitions were not alone proof of incompetency or testamentary incapacity was properly refused, being on the weight of the evidence.

10. WILLS ⬸331(3) — INSTRUCTION ON UNNATURAL DISPOSITION REFUSED AS ARGUMENTATIVE.

While Vernon's Sayles' Ann. Civ. St. 1914, art. 7855, gives every person of sound mind absolute power of disposition over his property, yet, where unnatural disposition of property was shown as evidence of want of testamentary capacity, a requested instruction that, if the tes-

tator was not incapable, he might dispose of his property as he saw fit, though dictated by unreasonable prejudice toward one heir or overwhelming love for another, was properly refused, as being argumentative.

**11. TRIAL ⚌194(9) — INSTRUCTIONS ON WEIGHT OF EVIDENCE.**

While Vernon's Sayles' Ann. Civ. St. 1914, art. 7855, gives every person of sound mind absolute power of disposition over his property, yet where want of testamentary capacity was alleged, and unnatural disposition of property shown as evidence of such want of capacity, a requested instruction that, if the testator was not incapable, he might dispose of his property as he saw fit, in disregard of all natural affection, was properly refused as being on the weight of the evidence.

**12. WILLS ⚌38(2) — INSANE DELUSION INFLUENCING TESTAMENTARY DISPOSITION DEFEATS PROBATE.**

Insane delusions, as distinguished from general insanity, will, where it can fairly be inferred that the testamentary instrument was affected thereby, defeat probate.

**13. WILLS ⚌324(2)—TESTAMENTARY CAPACITY JURY QUESTION.**

The question whether the testator was competent at the time he made the will *held*, under the evidence, for the jury.

**14. WILLS ⚌324(4)—EXECUTION JURY QUESTION.**

The question whether the testator signed the testamentary instrument offered for probate *held*, under the evidence, for the jury.

**15. APPEAL AND ERROR ⚌978(3) — DENIAL OF NEW TRIAL FOR MISCONDUCT OF JURY NOT REVIEWED NO PREJUDICE APPEARING.**

An appellate court will not review the trial court's action in denying a new trial, on account of the alleged misconduct of the jury, to which appellant claimed he was entitled under Vernon's Sayles' Ann. Civ. St. 1914, art. 2021, unless it appears that the rights of the parties have been disregarded, or unless the evidence left the question reasonably doubtful, considering the effect of the misconduct on the jury.

**16. WILLS ⚌288(1) — STATUTORY REQUIREMENTS TO BE PROVEN BEFORE PROBATE.**

The requirements of Vernon's Sayles' Ann. Civ. St. 1914, art. 3271, that the testator at the time the will was executed was 21 years of age or married, of sound mind, and is dead, must be established before a will can be admitted to probate, regardless of whether the pleadings raise any such issue or not.

**17. APPEAL AND ERROR ⚌936(1)—PRESUMPTION WHERE COSTS WERE AWARDED CONTESTANT OF WILL THAT HE WAS SUCCESSFUL.**

Where probate of a will offered by appellant was denied, as was probate of an earlier alleged will offered by one of the contestants, *held* that, where all of the costs were taxed against appellant, the original proponent, it will be presumed on appeal, in favor of the judgment, there being nothing in the record to show that the action of the contestant increased the costs,

that contestant was the successful party, and hence under Vernon's Sayles' Ann. Civ. St. 1914, art. 2035, entitled to recover all her costs.

**18. WILLS ⚌405—TEMPORARY ADMINISTRATOR LIABLE FOR COSTS OF WILL CONTEST.**

Where executor appointed temporary administrator under Vernon's Sayles' Ann. Civ. St. 1914, art. 3302, allowing temporary administrators to exercise only such powers as are expressed in the order appointing them, intervened in will contest, though the order appointing him did not authorize him to do so, costs were properly taxed against him individually, and not against estate.

**19. COSTS ⚌230 — CONTESTANT OF WILL LIABLE FOR COSTS OF APPEAL.**

Where one of those contesting the probate of a will offered for probate another and earlier alleged testamentary instrument, and probate thereof was denied, *held* that, where such contestant also appealed, as did the original proponent, and all records were consolidated, all costs incurred by such contestant, who failed to maintain her contention on appeal, must be taxed against her.

Appeal from District Court, Dallas County; E. B. Muse, Judge.

Proceeding by Roy C. Campbell for the probate of an alleged last will and testament of A. W. Campbell, which was opposed by Sarah H. Campbell and others, in which proceeding Sarah H. Campbell tendered for probate another alleged last will and testament. On appeal to the circuit court, after a judgment of the county court, admitting to probate the instrument tendered by Roy C. Campbell, probate of both instruments was denied, and Roy C. Campbell appeals, and Sarah H. Campbell also appeals. Affirmed.

John M. Terrell and John W. Pope, both of Dallas, for appellants.

Spence, Haven & Smithdeal and Holland & Bartlett, all of Dallas, for appellees.

RASBURY, J. This is an appeal from the judgment of the trial court entered upon verdict of the jury finding that neither of two wills of A. W. Campbell should be probated. The matter was put in motion by appellant, Roy C. Campbell, son of the testator, who in the county court, with appropriate allegations, presented for probate the alleged last will and testament of the testator dated March 22, 1915, wherein he was nominated independent executor and made sole beneficiary of the testator's entire estate. Sarah H. Campbell, surviving spouse, and E. J. and P. S. Campbell, sons of the testator, contested the application on the ground that the testator did not possess testamentary capacity at the time the will was executed, and on the ground that the will, which was not witnessed, was not wholly in the handwriting of the testator nor signed by him. In the same proceeding appellee Sarah H. Camp-

⚌For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

bell tendered for probate, with appropriate pleading, the alleged last will and testament of the testator dated April 6, 1912, wherein she was nominated independent executrix and made sole beneficiary of the testator's estate. E. J. and P. S. Campbell filed no pleading attacking the genuineness or contesting the probate of the will tendered by Sarah H. Campbell, save that each in their attack upon the will of March 22, 1915, prayed that that will be declared invalid, and that the estate of A. W. Campbell be permitted to descend according to the law of descent and distribution, or that the will of April 6, 1912, be probated. Roy C. Campbell in that respect merely alleged in the county and district courts that the will so tendered had been revoked by a later will, the one tendered by him. After hearing in the county court the will of March 22, 1915, was admitted to probate as the last will and testament of A. W. Campbell. Appeal was had to the district court, where trial was had before jury. After certain instruction the court submitted to the jury for special verdict (1) whether Campbell had testamentary capacity on March 22, 1915; (2) whether the instrument dated March 22, 1915, was wholly in the handwriting of Campbell; (3) whether Campbell signed that instrument. The jury returned negative answers to all the interrogatories. At the request of appellant, Roy C. Campbell, the court submitted to the jury for special verdict whether Campbell had testamentary capacity on April 6, 1912. The jury answered in the negative. Upon the answers to the four special issues the court, by appropriate decree, denied probate of both wills, from which decree Roy C. Campbell and Sarah H. Campbell have appealed.

A general statement of the facts will not be made for the reason that those necessary to be stated can be recited in considering the particular issues presented in the brief. It is convenient, however, and appropriate at this point to recite the substance of the wills. The will of April 6, 1912, after reciting that the testator was of sound mind and disposing memory, and after revoking all former wills, directs, in substance, (1) that testator's just debts shall be paid by his executrix; (2) gives, devises, and bequeaths all property which he may own at his death to his wife, Sarah H. Campbell; (3) nominates and appoints his wife independent executrix, etc. The will of March 22, 1915, is identical, save that the testator's son, Roy C. Campbell, is the beneficiary, and is nominated and appointed independent executor, etc.

[1] The first issue presented arises upon the action of the court in overruling appellant Roy C. Campbell's special exception. As we have recited, the will of March 22, 1915, was admitted to probate in the county court. After its probate, and after Sarah

H., E. J., and P. S. Campbell had appealed from such order, the county judge, upon application previously made by Sarah H. Campbell and agreed to by all claiming an interest in the estate, partitioned the common property of A. W. Campbell and his wife, Sarah H. Campbell, setting aside one-half thereof to Sarah and one-half to the estate of A. W. Campbell without prejudice to her right to contest the will of March 22, 1915, or to probate the will of April 6, 1912. In the district court appellant, Roy C. Campbell, by exception challenged the right of appellee Sarah H. Campbell to maintain the contest in the district court on the ground that by demanding and securing a partition of the common estate of herself and husband she had ratified the disposition made by the latter of his portion in the will of March 22, 1915. We cannot agree with the contention. Our statutes confer upon the surviving spouse the right to have his or her moiety of the common property partitioned at any time after grant of letters. Article 3556, Vernon's Sayles' Civ. Stats. The exercise of that legal right does not, in our opinion, constitute ratification. Ratification is generally defined as the sanctioning, adopting, or acquiescing in some act done under circumstances which ordinarily would not bind the one but for such assent, etc. By the will, conceding for the time its validity, the testator made no pretense of disposing of Sarah H. Campbell's portion of the common property. His portion alone was all that the will assumed to devise. As a consequence there was no voidable or other act to be ratified by Sarah H. Campbell, by which otherwise she would not be bound.

[2] If the term ratification is inadvertently employed, and what is meant is election, as applied to wills, we are also of opinion that the contention is also without support in that rule, which, in substance, is that one who accepts a benefit under a will adopts it as a whole and renounces all rights inconsistent with the instrument. Before the thing taken under the will may be held to be a benefit it must appear that the beneficiary received something which otherwise he would not have been entitled to. Nothing was bestowed upon Sarah H. Campbell by the will of March 22, 1915. All was awarded to appellant, Roy C. Campbell; hence no benefit was derived. Recognizing the named executor filing inventories, accepting an estate devised by the will, but to which one is entitled in law, is not an election. McClary v. Duckworth, 57 S. W. 317, and cc.

[3, 4] It is claimed that the court erred in the manner of selecting the jury. On voir dire examination counsel for appellant, Roy C. Campbell, propounded to each juror, including those who finally sat at trial, the question, "Would the fact that the testator in making his will left out and did not mention and did not give anything to one or

more members of his family influence you in finding a verdict in this case?" Objection was made to the question on the ground that it tended to commit the jurors in advance on a fact which it was their duty to consider in connection with other testimony in determining the testator's testamentary capacity. The court sustained the objection. Illuminative of appellant's contention, and as appears from the record, one of the jurors was searchingly examined upon the fact presented by the question, and it is fair to say that the juror ultimately maintained in effect that unless a good reason for disinheriting one child was shown it would influence his verdict. The juror was excused, but subsequently recalled, when the trial court, upon mature consideration, concluded that the situation presented no basis for challenge for cause. The juror, however, did not sit at trial. We then recur to the ruling. Was it error? We conclude it was not. We will not be expected at this time to cite authority in support of the statement that the general rule is that the utmost freedom on examination on voir dire should be permitted in order to discover any interest, bias, opinion, or other fact tending to disqualify or affect the impartiality of prospective jurors towards or concerning the controversy which they are to determine or the parties thereto, both for the purpose of challenging the juror for cause, and as an aid to the intelligent exercise of the right of peremptory challenge. Among other matters, however, that mark the limitation of the general right, is the rule invoked by appellees, which forbids any examination the purpose of which is to have the juror indicate his views on certain facts, and thereby commit him to certain views or conclusions. The question asked the jurors in the present case and excluded by the court was whether they would be influenced by the fact that the testator had disinherited some members of his family. As we have recited, the will offered by appellant for probate was claimed to be invalid because the testator was without testamentary capacity at the time of its execution. Now, it also is the general and well-established rule that in ascertaining the testator's testamentary capacity the provisions of the will on the disposition made of the estate may be considered by the jury, and, if the will discloses an unnatural, unreasonable, or injust disposition, that fact may be considered and have weight, in connection with other testimony, according to the circumstances. Prather v. McClelland, 26 S. W. 657; Alexander's Comm. Wills, vol. 1, p. 481; Schouler's Wills, Exs. and Adms. vol. 1, p. 91; Morgan v. Morgan, 30 App. D. C. 436, 13 Ann. Cas. 1037, and note. The case last cited tends to limit the rule stated, while the note discloses that the current of opinion sustains the rule. That an answer to the question propounded would have indicated the juror's views on facts to be passed upon in determining the case, and would have tended to commit him one way or the other, is, we believe, clear. A juror that will not be influenced by any material fact, properly admitted and tending to disclose or illuminate the motives or emotions that induced a given course, is an uncommon person. All material and admissible facts ought and are presumed to influence the juror, notwithstanding some will outweigh and exercise greater influence than others. He is supposed to consider and necessarily be influenced by every fact, and from them all draw the inferences and deductions they warrant, and reach a conclusion from the whole. To require him to say that he will or that he will not let a given material fact influence him in reaching a conclusion, if chosen, is simply to commit him to or against that material fact in advance. The naked fact that the testator had disinherited certain members of his family might induce a juror to concede that that fact would influence him against such disposition, yet upon hearing all the facts he might conclude that such course was entirely justified. Having agreed, however, to be influenced by such disposition, he would in all probability refuse to consider the facts justifying; if he agreed not to be influenced by that fact, he would in like probability refuse to consider or give weight to it at the hearing. Either course would be improper. In the case cited below, in which the writ of error was denied, each juror agreed that he would not let a material fact, on the issue of whether certain property was homestead, influence him in determining that issue. The court declared it was a serious error to require appellant to accept jurors so committed, for the reason that the jurors would doubtless strive not to consider that fact in their deliberations. Parker v. Schrimsher, 172 S. W. 165. The only difference between the case cited and the one at bar, as we are able to see it, is that in the former the juror was actually committed while in the latter the attempt was made to do so. If it is improper to so commit the jurors, it is proper to exclude questions having that purpose in view.

Further, in determining the juror's impartiality there is, we believe, a distinction to be drawn between the effect or influence material facts and circumstances will exercise upon the reason in reaching a conclusion upon a given issue, and any bias, prejudice, preconceived notions, or opinions concerning the right, propriety, reasonableness, or justice of the act itself. In the nature of things, if an act appears to be unreasonable or immaterial or unjust, it is certain to influence. What we have said is as it ought to be. But if one is of opinion that an act, however excusable and whatever the provocation, is unreasonable, unjust, or improper, inherently wrong, it results that the opinion is obviously biased and prejudiced. The question exclud-

ed did not cover such a status. It merely inquired, broadly speaking, whether the juror would be influenced by the testimony.

[5] After introducing testimony tending to show that a number of checks and notes signed A. W. Campbell were in his handwriting, appellant tendered same in evidence for the purpose of comparing the signatures thereon with the signature attached to the will of March 22, 1915, which, upon objection by appellee, were excluded and of which appellant now complains. The court, in our opinion, did not err. The checks and notes had not been previously filed in the case. They were not relevant to any issue in the case. It is not claimed they were. Whatever may be the rule in other jurisdictions, it is the rule in this state that extrinsic documents, not filed in the case or relevant to any issue, are inadmissible as standards of comparison. Hanley v. Gandy, 28 Tex. 211, 91 Am. Dec. 315; Smyth v. Caswell, 67 Tex. 567, 4 S. W. 848; Jester v. Steiner, 86 Tex. 415, 25 S. W. 411; Mardes v. Meyers, 8 Tex. Civ. App. 542, 28 S. W. 693; Cook v. First Natl. Bank, 33 S. W. 998; Talbot v. Dillard, 22 Tex. Civ. App. 360, 54 S. W. 406; Sheppard v. Love, 71 S. W. 67; Wade v. Railway Co., 110 S. W. 84; Brin v. Gale, 135 S. W. 1133.

[6] It was shown by competent testimony that both wills were found sealed in a large envelope in the safe of testator. Across the envelope was written, "Personal property A. W. Campbell please do not open," and that the indorsement was in the handwriting of the testator, A. W Campbell. The envelope, with the indorsement, was offered in testimony, and excluded on the ground that it was irrelevant, etc. On error properly assigned, the contention is made that the envelope was admissible, with the other facts and circumstances surrounding the discovery of the will, and as part of the res gestæ. The bill of exception is qualified by the statement that the objection was subsequently withdrawn, save as to any purpose to compare the signature on the envelope with signature on other papers not "papers in the case." Whether the envelope was again offered in testimony does not appear. The record so standing, no error, in our opinion, is shown. While it appears that the point made in the objection that other papers not filed in the case could not be compared with the signature on the envelope was premature, it remains that the objection to its introduction for the purpose sought was withdrawn and it could have been introduced.

[7] On the issue of the testator's testamentary capacity, P. J. Reaney, who testified by deposition, was asked, in substance, whether, in his opinion, the testator, when he "lost his temper, became violently angry, and from what he said and did on such occasions," was capable of knowing and understanding what he was doing, etc.; to which he replied, in substance, that he believed that on such occasions testator was not responsible for his actions and speech. The witness, who, it appears from the record, performed part of the work of constructing the Campbell Hotel for testator, further said, in response to the question, that the testator was very suspicious of all so engaged, and imagined that trivial changes in the work was to his detriment, and as a result worked himself into high passion over such changes. Appellant, in proper manner, objected that the question called for and the answer gave the conclusion or opinion of the witness. We conclude that the testimony was admissible. We understand the rule to be that witnesses, whether experts or laymen, may, having first stated their observation or knowledge of the habits, conduct, expressions, peculiarities, disposition, temper, or character of the person, in turn may give their opinion as to whether he was mentally capable of knowing or understanding the nature and effect of his acts, etc., as distinguished from his opinion as to whether the testator possessed the degree of intelligence to do what he did do. Brown v. Mitchell, 88 Tex. 350, 31 S. W. 621, 36 L. R. A. 64. Such, it occurs to us, was the extent of the question and answer recited above.

[8] The further objection was made and preserved that the answer was not responsive. Obviously, a portion of the answer was responsive. The objection is to all of it. In such cases, if the inadmissible portion is not separated from the admissible, and the trial court requested to strike out that which is inadmissible, it fails in this court to constitute error. Wells v. Hobbs, 57 Tex. Civ. App. 375, 122 S. W. 451.

[9] Further, appellant is in no position to complain of the admission of that portion of the answer alleged not to be responsive for the reason that on cross-examination he elicited from the witness the identical statement, as well as substantially similar statements from other witnesses.

On the issue of testamentary capacity Frank E. McShaw, who testified by deposition, was asked, in substance, whether, while employed in constructing the Campbell Hotel, he ever observed testator in a state of "madness or high temper," how often, what caused it, and to explain sufficiently in order to show whether from important or trivial matters. The witness answered, in substance, that the testator was "mad" with witness so often he could not keep track of it. Occasionally he would treat witness with great consideration and favor. As to the cause of the outbreaks witness said he would charge that the architects were treating him badly, trying "to do him," and would threaten to fire his son Percy. The witness further stated that things got to that state that those working on the buildings were carrying guns, and, in substance, that Campbell's suspicions were without foundation, since the building was being

properly constructed, and there was a half dozen superintendents on the building to protect the testator, and that nobody tried to beat him. That the first part of the answer is responsive, we believe, is beyond doubt. It may be conceded that the latter portion is not, yet appellant having failed to separate the material from the immaterial, but having objected to the answer as a whole, its admission, for the reasons stated in our consideration of the preceding assignment, does not constitute reversible error.

[10] Appellant requested the court to instruct the jury that exhibitions of high temper, personal eccentricities, unreasonable prejudices, or all of them, were not alone proof of insanity, mental incompetency, or want of testamentary capacity, and that there was no presumption of continuity of continuance of such condition, even though it did temporarily incapacitate the testator. The court refused to allow the charge, and his action in that respect is assigned as error. The charge, in our opinion, was properly refused, for the reason that it is in effect upon the weight of the evidence. While it may be conceded, as the charge recites, that the facts enumerated—that is, exhibitions of high temper, eccentricities, and unreasonable prejudices—would not, in the absence of all other evidence, establish a want of testamentary capacity, at the same time the effect is to minimize the force of those facts by separating them from the evidence as a whole, and thus destroying their probative force when considered in connection with the full volume of the evidence. What we have said is substantially the language employed in Philpott v. Jones, 164 Iowa, 730, 146 N. W. 859, which expresses our views and which we approve. Edelstein v. Brown, 95 S. W. 1126, affirmed in 100 Tex. 403, 100 S. W. 129, 123 Am. St. Rep. 816, presents the precise point. There, on the issue of whether a common-law marriage had been contracted, appellant requested the court to instruct the jury that living together as husband and wife, and the holding out by each that the other is his or her lawful spouse, the execution by them of deeds as husband and wife, were not alone proof of marriage. The charge was refused, and this court affirmed the action on the ground that the requested charge was upon the weight of the evidence.

[11] Appellant also requested the court to instruct the jury that if the testator possessed testamentary capacity at the time he executed the will of March 22, 1915, he had the absolute right to dispose of his property according to his inclination, even though dictated by unreasonable prejudice toward one heir, or overwhelming love for another, as the same man, under the laws of Texas, may dispose of his property regardless of the ties of nature and relationship, and his children have no legal right thereto. The court refused the request, and his action in that respect is assigned as error.

In connection with the foregoing, the court gave no instructions relative to the power of the testator to make a will disposing of his property as he chose. Every person of sound mind has that power when properly exercised. Article 7855, Vernon's Sayles' Civil Stats. In will contests, when one of the issues is a want of testamentary capacity, it is appropriate and proper to so inform the jury. We are of opinion, however, that the refused charge is both inappropriate and improper for the reason that it is argumentative and afield of the subject. The language and expressions used in the charge are often employed by judges in opinions by way of argument, but we have not found nor been cited to any decision approving the use of the language in a charge announcing the right of the testator to dispose of his estate without limitation. In Philpott v. Jones, supra, it is said, in effect, that arguments of judges are not always correct guides for instructions on rules of law. To say that the testator may dispose of his estate as he chooses, and then add that his reason for so doing may be because of overwhelming love for one heir or unreasonable prejudice against another, and may be as well in disregard of all natural ties, is but defending the action and advancing reasons therefor.

[12] The charge was also objectionable, in our opinion, for the further reason that it was upon the weight of the evidence. As we have said, one of the claims of appellees was that A. W. Campbell did not have the mental capacity to make a will. In passing on that issue the jury had the right, as we have said, to consider the disposition made by the testator of his property. That a statement from the court, not that the testator could, if of sound mind, dispose of his property as he chose, but that he could do so in disregard of all natural affection or because of unreasonable prejudice, would tend to minimize the weight the unnatural disposition might produce upon the minds of the jurors, is, we believe, obvious.

[13, 14] It is contended that the court erred in not setting aside the finding of the jury that A. W. Campbell did not have testamentary capacity on March 22, 1915, for the reason that the testimony, without dispute or controversy, disclosed that he did have such capacity at that time. On the issue of testamentary capacity a great volume of evidence was adduced by both sides. That introduced by appellant, and from which we are to determine its sufficiency to raise the issue, tended to show that the testator was possessed of an ungovernable and violent temper, aroused by trifles, at which times the witnesses say the testator would become livid, tremble, his eyes take on an unnatural glare, and he would talk or mumble incoherently. During such outbreaks the testator would threaten

to, and sometimes did, destroy property; would cruelly beat animals, as dogs, horses, and on one occasion killed a number of domestic ducks. He would likewise cruelly punish his children. He became greatly angered when his son Percy married, and cursed, applied epithets to, and abused and threatened to kill an old friend, who knew nothing of it, for ruining his home. It was common for him to curse, abuse, and threaten serious bodily harm to those around him and with whom he transacted business, often exhibiting deadly weapons in connection with such threats. Often, subsequent to such outbreaks, he would, with apparent candor, fail to recall them. It was further shown that he was unforgiving, moody, quarrelsome, and resentful, refusing for long periods to speak or converse with his wife and children on ordinary topics. For the last three years of his life he spoke to his daughter on but two or three occasions, and to his wife but little. To Edwin, a wayward and dissipated son, he was very cruel and unforgiving. He resented the marriage of his sons Percy and Roy, and charged that their wives had married them for base motives. The former, who was, at the time of his marriage, in the employ of his father, was told that he and the kind his wife was could not live with him, and to "get out." The testator was also shown by inference to be callous to family and blood ties, and to be penurious and miserly. There was expert testimony tending to show that the various acts which we have generally recited indicated an abnormal mental condition, such as would not indicate a person capable of understanding what he was doing and the nature and effect of his acts concerning such matters. Appellant introduced a great number of witnesses, many of them personal friends, business associates, and fraternal brethren of many years, who uniformly testified to the mental balance, kindness, and intelligence of the testator, and his considerate treatment of his family, and his normal activities in practically every respect. In Vance v. Upson, 66 Tex. 476, 1 S. W. 179, after reciting that one must at the time of making his will understand the nature of the business he is undertaking, the nature and extent of his property, the manner and to whom he desires to transmit it, the court, in effect, declares that if at that time the testator was under the influence of an insane delusion, either in respect to his property or the natural and proper objects of his bounty, which affected the disposition of his property or induced the making of the will, he did not possess the requisite testamentary capacity. In Garrison v. Blanton, 48 Tex. 299, it is said, in substance, that, in order to establish a want of testamentary capacity, it is not essential that the state of mind "should fall under the head of insanity, in any of its kinds or grades, as it is described and attempted to be classified." It is said by an author of eminence

that there is not an American case of consequence which does not hold that insane delusions, as distinguished from general insanity, where it can be fairly inferred that the instrument was effected thereby, will defeat probate. Schouler, Wills, Ex. Ad. (4th Ed.) vol. 1, § 159. We conclude, therefore, that an issue was presented for the determination of the jury. The facts generally recited, coupled with the unnatural and unreasonable disposition made of testator's property, raises an issue, not of general insanity, wholly incapacitating the testator, but one of monomania or insane delusion, which probably affected the disposition of the property or induced the making of the will. The evidence unquestionably discloses mental characteristics from which insane delusions would unconsciously spring, and which are quick to conjure its victims into believing that which is wholly without foundation in truth. Unless we discard the evidence of his patient life companion, his children, who knew him in the home, where he had unquestioned dominion and unrestrained opportunity for the functioning of his mental peculiarities or distortions, and those who came in contact with him in such manner as to cross or oppose his wishes or purpose, we cannot say there was no issue of fact for the jury.

[15] It is next contended that the finding of the jury that testator did not write and did not sign the will of March 22, 1915, and the judgment entered thereon, is without support in the evidence. On the issue presented by the contention Dr. William Folsetter, W. J. Kain, G. G. Wright, and J. B. McDougal testified for appellant that they had known A. W. Campbell intimately for a period of from 30 to 45 years, and had been associated with him during that time in many business matters, and had constantly during said time seen him write and execute his signature and was familiar with same. Each gave it as his opinion that the will of March 22, 1915, was wholly in the handwriting of A. W. Campbell, and that the signature thereto was his; for appellee Mrs. Sarah H. Campbell testified that she had known the handwriting of A. W. Campbell for a period of 40 years, and gave it as her opinion that the signature to the will of March 22, 1915, was not his signature. P. S. and E. J. Campbell, sons of A. W. Campbell, both testified that they had seen their father write and execute his signature, and gave it as their opinion that the will nor the signature was in his handwriting. Otto H. Lang, after testifying that he became familiar in recent years with A. W. Campbell's signature, gave it as his opinion that he did not sign the will of March 22, 1915. Lang Wharton, M. C. Lund, and Ray Nesbit, after having qualified as handwriting experts, compared the signature to the will of March 22, 1915, with the signature to the will of April 6, 1912, which was a file paper in the case, and admitted by all concerned to

contain the genuine signature of A. W. Campbell, and gave it as their opinion that the handwriting and the signature were not the same. In rebuttal Dr. John K. Stone, Annette Campbell, and appellant. because of familiarity with A. W. Campbell's handwriting, and B. B. Johnston, E. S. McLaughlin, Robt. V. Sanders, because of familiarity with Campbell's handwriting and as experts, from comparison testified that the will of March 22, 1915, and the signature thereto, were in their opinion in the handwriting of the testator. In reference to the foregoing we cannot escape the conclusion that the evidence as recited presents, at most, a conflict to be harmonized or compromised by the jury. As a consequence we conclude that the contention should be overruled.

[16] It is urged that the court erred in refusing to set aside the verdict of the jury and grant appellant a new trial because of misconduct of the jury during their deliberations. Article 2021, Vernon's Sayles' Civil Statutes, regulates the granting of motions for new trials because of misconduct of the jury. In construing that article the court of last resort in this state, in passing upon certain alleged misconduct of the jury, said by the court to be "very reprehensible," such in fact as authorized and should have moved the court to punish the jurors, declared that since the granting of a new trial on such ground was within the discretion of the trial judge, and since that court regarded that discretion upon a level with the discretion vested in trial judges in most instances, it would not review the court's action unless "it clearly appears that the rights of parties have been disregarded," or unless the evidence taken on the motion left it "reasonably doubtful" concerning the effect the misconduct had upon the jury, for the reason that the trial judge could form safer conclusions in that respect by observing and examining the jurors than could an appellate court. Houston & Texas Cen. R. R. Co. v. Gray, 105 Tex. 42, 143 S. W. 606. We were of the opinion that this court could review the conclusions of the district judge in such matters in the same manner that we could in any other matter subject to review. Andrews Lumber Co. v. Missouri, Kansas & Texas Ry. Co., 158 S. W. 1194. That case has been overruled by the Supreme Court through the agency of the Commissions of Appeals on the authority of Gray's Case, supra. In the light of the holding by which we are controlled we have carefully examined the facts set out in the bill of exceptions as constituting misconduct, and have reached the conclusion that it does not present a case which discloses that appellant's rights were disregarded. We do not set out the various facts and circumstances which it is claimed constituted the misconduct, for the reason that it is only our duty to reach a conclusion upon

the facts and state it, and for the further reason that our failure to do so will not deprive appellant in any way from reviewing our conclusion, since all the facts relied upon are included in the bill of exception presenting the issue.

[17] At this point we will consider the contention of appellant, Sarah H. Campbell, that the will of April 6, 1912, should have been admitted to probate. As we have shown in our statement of the pleading, none of the parties contested Sarah H. Campbell's attempt to probate the will, appellant, Roy C. Campbell, contenting himself with the plea that that will was revoked by the will of March 22, 1915, while P. S. and E. J. Campbell, appellees, prayed for the defeat of the will of March 22, 1915, and that the property be permitted to descend according to the law of descent and distribution, or that the will of April 6, 1912, be admitted to probate. The pleading and the evidence so standing when the case was submitted to the jury, counsel for appellant, Roy C. Campbell, requested the court to inquire of the jury whether A. W. Campbell possessed testamentary capacity on April 6, 1912, the date of the first will. The interrogatory was allowed; whereupon counsel for appellant Sarah H. Campbell requested the court to direct the jury peremptorily to answer the interrogatory in the affirmative, which the court refused to do, and which action is assigned as error. It is contended, in substance, by appellant Sarah H. Campbell that the peremptory instruction should have been given for the reason that the undisputed evidence and the admissions of the parties established the right to have the will of April 6, 1912, probated. We cannot agree with the contention. Before the proponent of a will is entitled to have it admitted to probate he is required to prove that the testator at the time the will was executed was 21 years of age or married, of sound mind, and is dead, with other matters unimportant here. Article 3271, Vernon's Sayles' Civ. Stats. It has been declared that, until all the constituent facts required by the statutes are proven, the will may not be admitted to probate. Tynan v. Paschal, 27 Tex. 286, 84 Am. Dec. 619. Such facts the article of the statute declares must be shown. As we construe its meaning, such facts must be proven whether there is a contest or whether the pleadings raise the issue or not. That the testamentary capacity of A. W. Campbell was put in issue, and that the evidence covered the period at which both wills were executed, we cannot escape. While there are many facts and circumstances tending to throw light upon the issue of capacity at the time the last will is claimed to have been executed, the force of which is not so apparent on that issue as the time of the execution of the first will, at the same time we are not prepared

to say, under the rules already stated, that the requisite capacity at that time was established by testimony concerning which ordinary minds could not differ.

[18] Appellant assigns as error the action of the court below in taxing against him all costs there incurred. By the provisions of article 2035, Vernon's Sayles' Civil Statutes, the successful party is entitled to recover all costs from his adversary. This proceeding was by appellant, Roy C. Campbell, against Sarah H., P. S., and E. J. Campbell, to probate the alleged last will and testament of A. W. Campbell. They were his adversaries, and defeated his suit, and were as a consequence entitled to recover from him all costs incurred. As we have said, however, in the same proceeding Sarah H. Campbell attempted to probate an alleged last will and testament of A. W. Campbell and was defeated. On that fact appellant, Roy C. Campbell, bases his claim of error, and contends that the court should have apportioned the costs. If the act of Sarah H. Campbell in attempting to probate the will of April 6, 1912, in this proceeding, set in motion by appellant, Roy C. Campbell, appreciably increased the costs, it is not made so to appear by the record. It is merely asserted here, as it was in the court below in the motion for new trial, that the court erred in rendering judgment for costs against appellant, Roy C. Campbell. So it stands that the contention is bottomed upon the fact alone that Sarah H. Campbell failed to establish the will of April 6, 1912. That being true, we necessarily indulge the presumption that the court below must have found facts justifying its judgment. That without any single fact or circumstance before us indicating the amount of costs incurred by Sarah H. Campbell in seeking the affirmative relief she did seek we could neither equitably nor intelligently apportion costs, even if it should be done, is obvious.

[19] It is further contended in reference to the costs that they should, in any event, have been taxed against appellant, Roy C. Campbell, as temporary administrator and not individually. After the will of March 22, 1915, was admitted to probate in the county court, and on the day that appeal from such order was perfected, the county judge appointed appellant, Roy C. Campbell, temporary administrator of the estate of A. W. Campbell, conferring upon him ample authority to possess the estate, preserve and care for it, and to collect all moneys or effects due the estate, and pay certain obligations with concurrence of the intestate's surviving widow and the court. After the contest was transferred to the district court, and after appellant, Roy C. Campbell, was appointed temporary administrator, as recited, nearly if not all pleadings, whether amended or supplemental, were signed by counsel as attorney for Roy C. Campbell, temporary administrator, who assumed by his pleading at least to prosecute the probate of the will of March 22, 1915, in that capacity. The appeal here was first made in that capacity. Ultimately an appeal was also prosecuted by appellant, Roy C. Campbell, individually. By the provisions of article 3302, Vernon's Sayles' Civil Statutes, temporary administrators shall have and exercise only such rights and powers concerning the estate as are specifically and clearly expressed in the order appointing them. The order appointing appellant temporary administrator did not attempt to authorize him to intervene in the pending contest, which, in our opinion, is sufficient upon which to hold that he was as a consequence without authority to bind the estate in that respect. While we place our ruling on that ground, we are not to be understood as holding that such authority could be conferred on temporary administrators under the provisions of title 52, c. 7, Vernon's Sayles' Civil Statutes.

After appellant, Roy C. Campbell, perfected his appeal from the judgment of the district court, Sarah H. Campbell also appealed for the purpose of presenting her claim that the will of April 6, 1912, should be admitted to probate. All records on appeal were consolidated, including the appeal by Roy C. Campbell individually. Inasmuch as Sarah H. Campbell has failed to maintain her contention, all costs incurred in her appeal from the judgment of the district court will be taxed against her.

Finding no reversible error in the record, the judgment is affirmed.